2007 BNH 027

_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                    Bk. No. 05-13724-JMD
                                                          Chapter 11
Felt Manufacturing Co., Inc.,
f/k/a Foss Manufacturing Co., Inc.,
                  Debtor


Official Committee of Unsecured Creditors,
on behalf of the bankruptcy estate of
Felt Manufacturing Co., Inc.,
f/k/a Foss Manufacturing Co., Inc.,
                  Plaintiff,


v.                                                        Adv. No. 06-1171-JMD

Stephen Foss, Patricia Foss, Jenifer Foss Smyth,
Kevin Sexton, Douglas Kinney, Marcella Darling,
John Smyth, Dennis Foss, David Rowell,
Foss Family LLC I, Foss Family LLC II, Foss Realty, Inc.,
Business Helicopters, Inc., f/k/a New Hampshire Helicopters, Inc.,
Foss Family 2004 Irrevocable Trust, and
Custom Travel of New Hampshire, Inc.,
                  Defendants

*Robert J. Feinstein, Esq.*                    *Joseph A. Foster, Esq.*
*Beth E. Levine, Esq.*                         *Cheryl C. Deshaies, Esq.*
*Gillian N. Brown, Esq.*                       *McLane, Graf, Raulerson & Middleton, P.A.*
*Pachulski Stang Ziehl Young Jones &*          *Manchester, New Hampshire*
*Weintraub LLP*                                *Attorneys for Plaintiff*
*New York, New York*
*Attorneys for Plaintiff*


*Bruce A. Harwood, Esq.*                       *Sean T. Carnathan, Esq.*
*Sheehan, Phinney, Bass + Green*               *O'Connor, Carnathan and Mack LLC*
*Manchester, New Hampshire*                    *Burlington, Massachusetts*
*Attorney for Defendants Stephen Foss,*        *Attorney for Defendants Stephen Foss, Foss*
*Foss Family LLC I, Foss Family LLC II,*       *Family LLC I, Foss Family LLC II,*
*Foss Realty, Inc., and Business Helicopters, Inc.*  *Foss Realty, Inc., and Business Helicopters, Inc.*

*Paul D. Moore, Esq.*
*Jennifer L. Hertz, Esq.*
*Michael R. Gottfried, Esq.*
*Duane Morris LLP*
*Boston, Massachusetts*
*Attorneys for Defendants Patricia Foss,*
*Jenifer Foss Smyth, John Smyth, and*
*Foss Family 2004 Irrevocable Trust*

*Edmond J. Ford, Esq.*
*Ford, Weaver & McDonald, P.A.*
*Portsmouth, New Hampshire*
*Attorney for Kevin Sexton*

*William S. Gannon, Esq.*
*William S. Gannon PLLC*
*Manchester, New Hampshire*
*Attorney for Douglas Kinney*

*Karyn P. Forbes, Esq.*
*Shaheen & Gordon, P.A.*
*Concord, New Hampshire*
*Attorney for Marcella Darling*

*Daniel W. Sklar, Esq.*
*Nixon Peabody LLP*
*Manchester, New Hampshire*
*Attorney for Dennis Foss*

*Meghan M. Hart, Esq.*
*Kevin J. Lesinski, Esq.*
*William J. Hanlon, Esq.*
*Seyfarth Shaw*
*Boston, Massachusetts*
*Attorneys for Defendant David Rowell*

*Michael S. Askenaizer, Esq.*
*Law Offices of Michael S. Askenaizer, PLLC*
*Nashua, New Hampshire*
*Attorney for Defendant David Rowell*

## MEMORANDUM OPINION

### I.    INTRODUCTION

The Official Committee of Unsecured Creditors (the "Committee" or the "Plaintiff")

appointed in the chapter 11 case of Felt Manufacturing Co., Inc., f/k/a Foss Manufacturing Co.,

Inc. ("FMC" or the "Debtor"), acting on behalf of the chapter 11 estate of the above-captioned

debtor, filed a fifty-one count complaint against fifteen defendants.  The defendants are former

officers and directors of FMC, a shareholder and brother of an officer and director, a spouse of a

director, and various trusts and other legal entities owned or controlled by one or more of the

individual defendants.  The complaint asserts ten types of claims:  (1) breach of fiduciary duty,

(2) aiding and abetting breach of fiduciary duty, (3) waste of corporate assets, (4) unjust

enrichment, (5) declaration of illegal dividends, (6) deepening insolvency, (7) equitable

subordination, (8) recharacterization, (9) avoidance of fraudulent transfers, and (10) avoidance of

preferential transfers.  Fourteen of the fifteen defendants filed motions seeking to dismiss for

failure to state a claim upon which relief can be granted.  For the reasons stated in this opinion,

the motions to dismiss shall be granted in part and denied in part as set forth below.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§

1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States

Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).

This is a core proceeding in accordance with 28 U.S.C. § 157(b).


## II.    MOTION TO DISMISS STANDARD

In order to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure

7012(b),[1] the Court must accept the allegations of the complaint as true and make all reasonable

inferences in favor of the plaintiff, and if, under any theory, the allegations are sufficient to state

a cause of action in accordance with the law, the Court must deny the motion to dismiss.  Warth

v. Seldin, 422 U.S. 490, 501 (1975) (cited in Boles v. Filipowski (In re Enivid, Inc.), 345 B.R.

426, 441-42 (Bankr. D. Mass. 2006)); Alternative Energy, Inc. v. St. Paul Fire and Marine Ins.

Co., 267 F.3d 30, 33 (1st Cir. 2001); Blackstone Realty LLC v. Fed. Deposit Ins. Corp., 244 F.3d

193, 197 (1st Cir. 2001); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994); Bezanson

v. Gaudette (In re R & R Assocs. of Hampton), 248 B.R. 1, 4 (Bankr. D.N.H. 2000).  Dismissal

---

[1]  In general the Federal Rules of Civil Procedure are made applicable to this adversary
proceeding, with some exceptions and additional provisions, by the Federal Rules of Bankruptcy
Procedure.  The Federal Rules of Civil Procedure shall be referred to as "FRCP" and the Federal Rules of
Bankruptcy Procedure shall be referred to as "Rule" or the "Rules" in this opinion.

is appropriate only if the facts alleged by the plaintiff, taken as true, do not justify recovery.

Redondo Constr. Corp. v. Summertime Dev. Corp. (In re Redondo Constr. Corp.), Bk. No. 02-02887 (GAC), Adv. No. 04-00017, 2006 WL 3898311, at *2 (Bankr. D.P.R. May 22, 2006) (citing Aulson v. Banchard, 83 F.3d 1, 3 (1st Cir. 1996)).  In order to survive a motion to dismiss, a plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery."  Id. (citing Gooley v. Mobil Oil Corp., 851 F.2d 513 (1st Cir. 1988)).

> [I]n determining a Rule 12(b)(6) motion, the Court need not credit unsupported conclusions.  Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir.1989), overruled on other grounds, Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61 (1st Cir. 2004).  The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim."  Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).  "To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id. (quoting Fed. R. Civ. P. 8(a)(2)).  See also Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 237 (3d Cir. 2005) (under Federal Rule 8, the plaintiff need only plead the "basic facts" necessary to provide the defendant with fair notice of the plaintiff's claims and the general factual background upon which it rests and should not be deprived of the opportunity to pursue claims on a Rule 12(b)(6) motion for lack of detailed facts.).
>
> Nevertheless, it also is well established that the pleading requirements are "not entirely . . . toothless," Dartmouth Review, 889 F.2d at 16.  The First Circuit has required a minimal level of factual particularity rather than mere allegations of conclusions.  See Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir.1990) ("[T]he necessary factual averments are required with respect to each material element of the underlying legal theory.") (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988)).

Enivid, 345 B.R. at 441-42.

In Conley, the Supreme Court held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46 (emphasis

added).  "However, the Supreme Court has recently abrogated <u>Conley's</u> rule [in <u>Bell Atl. Corp.</u> <u>v. Twombly</u>, 127 S. Ct. 1955 (2007)].  In referring to <u>Conley's</u> 'no set of facts' language, the Court determined that it 'has earned retirement' and that '[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard.'"  <u>Mitan v. Feeney</u>, No. CV 07-3086SVWJWJX, 2007 WL 2068106, at *9 (C.D. Cal. July 18, 2007) (<u>citing Bell Atl.</u>, 127 S.Ct. at 1969).  The Supreme Court stated the accepted pleading standard as "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  <u>Bell Atl.</u>, 127 S. Ct. at 1969.  In discussing the "no set of facts" language in <u>Conley</u>, the Supreme Court indicated that "[o]n such a focused and literal reading of <u>Conley's</u> 'no set of facts,' a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the <u>possibility</u> that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  <u>Id.</u> at 1968 (emphasis added).  The Supreme Court observed that "a good many judges and commentators have balked at taking the literal terms of the <u>Conley</u> passage as a pleading standard."  <u>Id.</u> at 1969.  In support of that observation, the Court cited the decision in <u>O'Brien v. DiGrazia</u>, 544 F.2d 543, 546 n.3 (1st Cir. 1976).

Under <u>Bell Atlantic</u>, a complaint will survive a motion to dismiss under Rule 12(b)(6) only if the allegations in the complaint cross the line between "possibility and plausibility of 'entitle[ment] to relief.'"  <u>Bell Atl.</u>, 127 S. Ct. at 1966 (<u>citing</u> <u>DM Research, Inc. v. College of</u> <u>Am. Pathologists</u>, 170 F.3d 53, 56 (1st Cir. 1999)).  However, a plaintiff need not plead sufficient facts to establish a *prima facie* case.  <u>Swierkiewicz v. Sorema N.A.</u> 534 U.S. 506, 515 (2002) (cited with approval in <u>Bell Atl.</u>, 127 S. Ct. at 1969).  Rather, the complaint must only provide the defendants with fair notice of the plaintiff's claims and sufficient facts to provide notice of the grounds upon which such claims rest.  <u>Bell Atl.</u>, 127 S. Ct. at 1959; <u>Adelphia</u>

Communications Corp. v. Bank of Am., N.A. (In re Adelphia Communications Corp.), 365 B.R.
24, 33 (Bankr. S.D.N.Y. 2007).

 The decision in Bell Atlantic has created some uncertainty over the standard to be used to
assess the adequacy of pleadings. Iqbal v. Hasty, Docket Nos. 05-5768-CV(L) et al., 2007 WL
1717803, at *8, *11 (2d Cir. June 14, 2007) (interpreting Bell Atlantic as not requiring a
universal standard of heightened fact pleading, but requiring a flexible plausibility standard).
However, the First Circuit Court of Appeals has indicated post-Bell Atlantic "that to survive a
motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortiz
v. Margo Caribe, Inc., No. 06-1765, 2007 WL 1732883, at *2 (1st. Cir. June 18, 2007) (quoting
Bell Atl., 127 S. Ct. at 1967). A plaintiff must now plead facts sufficient to allow the necessary
inferences to be drawn that the plaintiff may be entitled to relief. Marrero-Gutierrez v. Molina,
No. 06-2527, 2007 WL 1765550, at *7 (1st Cir. June 20, 2007).

 It is not clear that the "retirement" of the literal interpretation of Conley has changed the
standard to be applied by this Court to motions under FRCP 12(b)(6) as in the past, the First
Circuit has not literally applied the "retired" language in Conley. See O'Brien, 544 F.2d at 546
n.3 ("[W]hen a plaintiff . . . supplies facts to support his claim, we do not think that Conley
imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of
unconstitutional . . . action into a substantial one.") (cited with approval in Bell Atl., 127 S. Ct. at
1969). The First Circuit Court of Appeals has previously stated that "[w]hile a complaint need
only set out 'a generalized statement of facts,' there must be enough information 'to outline the
elements of the pleaders' claim.'" Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977)
(quoting Wright & Miller, Federal Practice and Procedure: Civil § 1357). Accordingly, it
appears to the Court that the decision in Bell Atlantic has resulted in a rephrasing of the standard

under FRCP 12(b)(6) for assessing the adequacy of a complaint's allegations so that it is more in line with the standard adopted by the First Circuit in O'Brien.

Therefore, in order satisfy the requirements of FRCP 8(a) and to survive a motion to dismiss under FRCP 12(b)(6), the allegations in a complaint must put defendants on fair notice of the plaintiff's claim and allege sufficient facts to establish a plausible entitlement to relief. Bell Atl., 127 S. Ct. at 1967. The allegations in the complaint must cross the line between the mere possibility of relief to the plausibility of relief. Id. at 1966. However, requiring "plausible grounds [for relief] . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [to support relief]." Id. at 1965. Even if the Court believes that the proof of the facts alleged is "very remote and unlikely," a well pleaded complaint may proceed. Id.

"While most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense. . . . Dismissing a case under Rule 12(b)(6) on the basis of an affirmative defense requires that (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006) (citations and quotations omitted), cert. denied, 127 S. Ct. 2131 (2007).

## III.    DISCUSSION

### A.    Count I - Breach of Fiduciary Duty

Count I alleges that Stephen Foss ("Foss") and Kevin Sexton ("Sexton") (collectively the "Count I Defendants"), as officers and directors of FMC, (1) breached their fiduciary duties to

the corporation including the duties of care, loyalty, honesty, candor, and disclosure through various actions and failures to act specified in the complaint, and (2) breached their fiduciary duties to FMC's creditors because FMC was insolvent or in the "zone of insolvency" at the time of their alleged conduct. The Count I Defendants seek dismissal of Count I on a number of grounds and the Committee opposes their motion. The motions to dismiss Count I filed by the Count I Defendants shall be denied. The Court shall address *seriatim* the grounds advanced by the Count I Defendants for dismissal of Count I.

### 1.    Failure to Plead Fraud with Particularity

The general rule in federal court pleadings is that a plaintiff need only plead a "short and plain statement of the claim." FRCP 8(a)(2). However, an exception to this general rule requires in all averments of fraud or mistake that "the circumstances constituting fraud or mistake shall be stated with particularity." FRCP 9(b). The particularity requirements in allegations of fraud and mistake are satisfied by averments "of the who, what, where, and when of the allegedly false or fraudulent misrepresentation." Rodi v. Southern New England School of Law, 389 F.3d 5, 15 (1st Cir. 2004) (citing Alternative Sys. Concepts, Inc. v. Synopsys, Inc. 374 F.3d 23, 29 (1st Cir. 2004)). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FRCP 9(b); Lane v. McCallion, 937 F.2d 694 (1st Cir. 1991) (vacating dismissal of a count under 11 U.S.C. § 523(a)(2)(A) because intent need not be pled with particularity but affirming dismissal of a count under 11 U.S.C. § 523(a)(2)(B) due to a failure to allege particular omissions or false information in a written financial statement).

The Count I Defendants contend that Count I should be dismissed because the Committee has failed to plead allegations of fraud and misrepresentation with particularity.[2]  The Committee responds that it is not alleging fraud or misrepresentation, but breach of fiduciary duty, a claim which does not require the heightened pleading requirements of FRCP 9(b).  In addition, even if the heightened pleading requirements apply, it argues that it has satisfied the requirement.

FRCP 9(b), by its terms, applies only to allegations of fraud or mistake.  Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995).  "The purpose of this rule is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations.  Without such specificity, defendants in these cases would be put to an unfair disadvantage, since at the early stages of the proceedings they could do no more than generally deny any wrongdoing."  Id.  However, an allegation of a breach of fiduciary duty is not an allegation of fraud, simply because allegations of misrepresentation, nondisclosure or inaccurate reporting are alleged as components of the overall legal theory that a defendant violated a fiduciary duty.  Lalonde v. Textron, Inc., 369 F.3d 1, 6 (1st Cir. 2004); Boles v. Filipowski (In re Enivid, Inc.), 345 B.R. 426, 442 (Bankr. D. Mass. 2006).

The allegations in the complaint provide the Count I Defendants with fair notice of the nature of the claimed breaches of fiduciary duty and are sufficient to establish a plausible entitlement to relief.  Although the complaint contains allegations of fraud and

---

[2]  The Court notes that the heightened standards of FRCP 9(b) do not apply to all claims of fraud in this Circuit.  In Pearson v. First NH Mortgage Corp. 200 F.3d 30 (1st Cir. 1999), the First Circuit vacated a bankruptcy court order dismissing a motion to alter or amend an order approving a settlement and allowed a plaintiff to proceed to discovery based upon an alleged fraud where the motion only alleged a "colorable claim."  Id. at 35.  This Court is unable to discern the distinction between a moving paper that alleges a "colorable claim" and one that alleges a "plausible claim" under the standard in Bell Atlantic applicable to FRCP 8(a).

misrepresentation, Count I does not focus on recovery for fraud or misrepresentation but rather seeks relief for breach of fiduciary duty to FMC based upon certain allegedly fraudulently and improper conduct by the Count I Defendants as officers and directors.  Accordingly, the heightened pleading requirements of FRCP 9(b) do not apply.  Id.  If the Count I Defendants believe that the complaint does not adequately apprise them of the nature of the Committee's claim, a motion for a more definite statement under FRCP 12(e), rather than a motion to dismiss under FRCP 12(b)(6), is more appropriate.  Lalonde, 369 F.3d at 6 n.10.

### 2. *In Pari Delicto* **Doctrine**

The Count I Defendants argue that Count I should be dismissed under the *in pari delicto* doctrine.  "*In pari delicto* is both an affirmative defense and an equitable defense.  Broadly speaking, the doctrine prohibits plaintiffs from recovering damages resulting from their own wrongdoing."  Nisselson v. Lernout, 469 F.3d 143, 151 (1st Cir. 2006), cert. denied, 127 S. Ct. 2131 (2007).  The doctrine is grounded on two principles.  First, where the plaintiff and the defendant are both responsible for wrongful actions, courts should not resolve disputes between them arising from the wrongdoing.  Id.  Second, denying relief to an admitted wrongdoer is an effective means of deterring illegality.  Id.

Motions to dismiss are usually based upon a plaintiff's failure to state an actionable claim in its complaint.  However, a motion to dismiss may be based upon the inevitable success of an affirmative defense in certain situations.  Id.  Dismissing a case "on the basis of an affirmative defense requires that '(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude."  Id. at 150 (quoting Rodi, 389 F.3d at 15).  The Supreme Court has restricted the *in pari delicto* doctrine to situations in which (1) the plaintiff, as

compared to the defendant, bears at least substantially equal responsibility for the wrong he seeks to redress, and (2) preclusion of the suit would not interfere with the purposes of the underlying law or otherwise contravene the public interest.  Pinter v. Dahl, 486 U.S. 622, 635-38 (1988); Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310-11 (1985).  Similarly, New Hampshire law also restricts the application of the *in pari delicto* doctrine in situations where the public policy supporting protection of the persons harmed by the wrongdoing would be frustrated.  Flags I, Inc. v. Kennedy, 131 N.H. 412, 416-17 (1989).

In its complaint the Committee alleges numerous acts and omissions by the Count I Defendants that viewed in the light most favorable to the Committee would establish a breach of the fiduciary duties of officers and directors.  FMC's culpability for the actions of its officers and directors, for purposes of the *in pari delicto* doctrine, is governed by applicable state law. Nisselson, 469 F.3d at 154; Adelphia Communications Corp. v. Bank of Am., N.A. (In re Adelphia Communications Corp.), 365 B.R. 24, 46 (Bankr. S.D.N.Y. 2007).  FMC was a New Hampshire corporation with its principal offices in New Hampshire during the time period that the Count I Defendants allegedly committed the relevant acts and omissions; therefore, New Hampshire law governs.  New Hampshire has recognized the *in pari delicto* doctrine.  Witte v. Desmarais, 136 N.H. 178, 187 (1992); Belisle v. Belisle, 88 N.H. 459, 461 (1937).  A principal is chargeable with the acts of its agent while acting in its behalf.  Saidel v. The Union Assurance Society, Ltd., 84 N.H. 232 (1930); Warren v. Dodge 83 N.H. 47, 53-54 (1927).  However, representations by an agent not made contemporaneously with the transaction will not to bind the principal.  Cate v. Blodgett, 70 N.H. 316, 317 (1900).  If the wrongful conduct of the Count I Defendants is imputed to FMC, then the parties would be *in pari delicto* under New Hampshire law.  Belisle, 88 N.H. at 461.

11

The Count I Defendants contend that the *in pari delicto* defense applies because the breach of fiduciary duty claims are based upon allegedly fraudulent statements and representations to FMC's lender.  They argue that because FMC is bound by the statements of its officers, it would be deemed a participant in any such fraudulent statements, and since it received the benefit of any such fraud in the form of loan advances, the *in pari delicto* doctrine bars any recovery on behalf of the bankruptcy estate of FMC.

If the premise of the Count I Defendants' argument were correct, their contention would have merit.  However, the allegations of fraudulent misrepresentations to FMC's lender are only a portion of the allegations supporting the breach of fiduciary duty claims in Count I.  The Committee also alleges a breach of the fiduciary duty of the Count I Defendants, as officers and directors, based upon (1) a failure to monitor the activities of other officers and employees involved in the lending relationship and (2) causing or permitting FMC to (a) pay excessive salaries and bonuses (¶¶ 94-98 of the complaint)[3], (b) pay illegal dividends (¶¶ 117-118), (c) misuse corporate funds to pay for personal expenses of officers and directors and their families (¶¶ 99-111), and (d) make transfers to insiders for less than adequate consideration (¶¶ 120-124).  The allegations in the complaint, taken in the light most favorable to the Committee, suggest that the acts and omissions of the Count I Defendants were motivated not solely to benefit FMC, but also to benefit various insiders of FMC, including the Count I Defendants, their relatives and affiliated business entities.

If the complaint were seeking recovery against the Count I Defendants for fraud against third parties on behalf of FMC, the *in pari delicto* defense might well be sufficient for purposes

---

[3]  In this opinion, numbers following the "¶" symbol refer to the corresponding paragraph in the complaint.

of a motion to dismiss.  See Nisselson, 469 F.3d at 158 (uncontroverted facts sufficient to

establish the *in pari delicto* defense are definitively ascertainable from the complaint); Erricola

v. Gaudette (In re Gaudette), 241 B.R. 491, 500-01 (Bankr. D.N.H. 1999) (facts pleaded in

complaint established corporation as co-conspirator with defendant).  However, in this case the

complaint alleges that the Count I Defendants breached their fiduciary duties to FMC by

defrauding FMC's lender by falsifying financial information, but also by authorizing,

acquiescing in and failing to monitor the activities of the corporation in connection with payment

of excessive salaries, illegal stock dividends, improper expense reimbursement, improper or

fraudulent transfers to or for the benefit of themselves or other insiders.  The complaint alleges

the Count I Defendants breached the fiduciary duty they owed to FMC.  If a defendant breaches

a fiduciary duty owed to a plaintiff, the defendant's alleged wrongful conduct is not imputed to

the plaintiff.  Wrongful acts on behalf of a corporation are not the same thing as wrongful acts

against it.  Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 456 (7th Cir.), cert. denied, 459

U.S. 880 (1982).

    "The Committee, standing in the shoes of the debtor, could not recover from third parties

[or its officers and directors] for their participation in a scheme that the debtor had itself initiated

and joined in."  Mediators, Inc. v. Manney (In re Mediators, Inc.), 105 F.3d 822, 824 (2d Cir.

1997); see also In re Scott Acquisition Corp., 364 B.R. 562, 566 (Bankr. D. Del. 2007).  The *in

pari delicto* defense denies recovery for damages arising from a wrongful act by a plaintiff

equally at fault with a defendant.  Where the parties are both at fault, but not equally at fault, the

trial court must make findings regarding the respective blame and grant relief to the party whose

fault is less.  Ross v. Bolton, 904 F.2d 819, 824 (2d Cir. 1990) (citing Pinter and Bateman).

However, when wrongful acts are committed against a corporation by its officers and directors,

the wrongful nature of such acts is not imputed to the corporation.  Official Committee of

Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 359 (3d Cir. 2001); Fed. Deposit

Ins. Corp. v. Shrader & York, 991 F.2d 216, 223 (5th Cir. 1993); Cenco, 686 F.2d at 456.

Therefore, the *in pari delicto* defense is not a bar to the Committee's pursuit of breach of

fiduciary duty claims against the former officers and directors of FMC.  Mediators, 105 F.3d at

826-27.

### 3.        Standing of the Committee

The Count I Defendants contend that the Committee is basing its claim in Count I, in

part, upon a breach of a fiduciary duty to FMC's creditors because the corporation was in the

"zone of insolvency" (¶¶ 131, 133-35).  The Committee responds that it is not asserting any

claims which belong to creditors, but only claims belonging to the FMC bankruptcy estate, all as

set forth in ¶¶ 11-13.  The Count I Defendants are correct in their assertion that the Committee

has no standing to bring claims belonging to individual creditors.  Caplin v. Marine Midland

Grace Trust Co. of New York, 406 U.S. 416, 434 (1972); Gaudette, 241 B.R. at 500 (citing

Regan v. Vinick & Young (In re Rare Coin Galleries of Am., Inc.), 862 F.2d 896 (1st Cir.

1988)).  Individual creditors may not have standing to bring claims for breach of fiduciary duty

against officers and directors of an insolvent corporation, but they do have standing to bring

derivative claims against officers and directors for breach of fiduciary duty.  North Am. Catholic

Educ. Programming Found., Inc. v. Gheewalla, No. 521, 2006, 2007 WL 1453705, at *7 (Del.

May 18, 2007) (under Delaware law creditors do not have a direct claim against directors of a

corporation that is either insolvent or in the zone of insolvency).  The Committee in this case is

bringing a derivative claim on behalf of the bankruptcy estate.  The Count I Defendants do not

dispute that the Committee has standing to pursue claims of the bankruptcy estate.  The fact that

recovery on claims of the estate might benefit creditors of the estate does not affect the Committee's standing to bring any such claim, so long as the Debtor could have brought the claim prepetition.  Mediators, 105 F.3d at 825-26.

The Committee does not claim to be pursuing claims which belong to an individual creditor or a group of creditors.  However, in its complaint the Committee alleges that the Count I Defendants owed fiduciary duties to FMC's creditors as well as to FMC.  See ¶¶ 131, 133 and 135.  In addition, the complaint also alleges harm to FMC's creditors.  See ¶ 134.  The Count I Defendants contend that the Committee does not have standing to pursue such claims on behalf of creditors.  The First Circuit Court of Appeals has rejected that argument.  Morley v. Ontos, Inc. (In re Ontos, Inc.), 478 F.3d 427, 432 (1st Cir. 2007).

Under New Hampshire law, officers and director of a corporation owe a fiduciary duty to the corporation and its shareholders.  Bartlett v. Dumaine, 128 N.H. 497, 513 (1986) (an officer of a corporation may be liable for a breach of fiduciary duty which causes a diminution in the value of the corporation); Rosenblum v. Judson Eng'g Corp., 99 N.H. 267, 271 (1954) (officers and directors of a corporation owe a duty to shareholders to reasonably protect and conserve the interests of the corporation).  The breach of the fiduciary duty of an officer or a director harms the corporation.  Prod. Res. Group, LLC v. NCT Group, Inc., 863 A.2d 772, 792 (Del. Ch. 2004).  Once a corporation is insolvent, its directors owe a fiduciary duty to the corporation's creditors and creditors have standing to maintain derivative claims for breaches of fiduciary duty.  Gheewalla, 2007 WL 1453705, at *7 (creditors may bring derivative claims under Delaware law); Flags I, 131 N.H. at 416-17 (derivative claim exists under New Hampshire law); Mica Prods. Co. v. Heath, 81 N.H. 470, 471 (1925) (under New Hampshire law creditors of an insolvent corporation have a direct claim against the directors for fraudulent or preferential

transfers).  "Thus, regardless of whether they are brought by creditors when a company is insolvent, [claims for breach of fiduciary duty] are derivative, with either shareholders or creditors suing to recover for harm done to the corporation as an economic entity and any recovery logically flows to the corporation and benefits the derivative plaintiffs indirectly to the extent of their claim on the firm's assets."  <u>Prod. Res.</u>, 863 A.2d at 792.  While it is correct that a bankruptcy trustee does not have standing to pursue the claims of individual creditors, or even a class of creditors, he may pursue the interests of the bankruptcy estate and derivatively the interests of its creditors.  <u>Bondi v. Grant Thornton Int'l (In re Parmalat Sec. Litig.)</u>, 377 F. Supp. 2d 390, 420 (S.D.N.Y. 2005); <u>Gheewalla</u>, 2007 WL 1453705, at *7.  Indeed, where the injury from an alleged breach of an officer's or a director's fiduciary duty to a bankrupt corporation is to all creditors, the trustee may be the only person who may bring such a claim.  <u>Official Committee of Unsecured Creditors of Norstan Apparel Shops, Inc. v. Lattman (In re Norstan Apparel Shops, Inc.)</u>, Bk. Nos. 05-15265-608, 05-15268-608, Adv. No. 06-1279-608, 2007 WL 965963, at *10 (Bankr. E.D.N.Y. Mar. 30, 2007).

Accordingly, the Committee has standing to bring the claims against the former officers and directors of FMC for their alleged breach of the fiduciary duty owed by them to FMC and its creditors.

### 4.  Discretionary Authority of Officer

Sexton alone seeks dismissal of Count I based upon the failure of the complaint to allege that he exercised "discretionary authority" in violation of NH RSA 293-A:8.42(a), a provision of the New Hampshire Business Corporation Act (the "NH BC Act").  The complaint alleges that Sexton was the Chief Financial Officer of FMC (¶ 18).  While the precise duties and qualifications of the chief financial officer ("CFO") of a corporation will vary, the CFO is a

senior member of management charged with the overall responsibility for the accounting systems, including the accuracy of the books and records of the corporation, as well as its accounting and fiscal decisions.  Black's Law Dictionary 253 (8th ed. 2004).  Sexton has not placed in the motion to dismiss record any provision of FMC's articles of incorporation or bylaws that would tend to establish that the CFO of FMC had no discretionary authority over any of the actions alleged in the complaint.  His argument appears to be based upon his view that the Committee failed to allege that he had discretionary authority in his job as CFO of FMC.

Sexton's argument, if correct, is unavailing.  Subjective characterizations and unsubstantiated conclusions are not sufficient to support a claim.  Bell Atl., 127 S. Ct. at 1966; Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983).  However, when "conclusions are logically compelled, or at least supported, by the stated facts" and "an inference rises to what experience indicates is an acceptable level of probability . . . 'conclusions' become 'facts' for pleading purposes."  Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir. 1990) (quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)).  In this case, the allegations that Sexton was the CFO of FMC (¶¶ 2, 4) coupled with the allegations regarding the financial reporting problems or errors of FMC (¶¶ 7, 18, 42, 53, 64-65, 73-78, 131-133), the alleged illegal dividends(¶¶ 117-118), and Sexton's admissions to other directors (¶ 8), support a plausible conclusion that Sexton had and exercised discretionary authority as a senior officer of FMC.  Sexton is free to rebut that inference at trial, but his argument that he only took orders and never exercised any discretion or decision-making authority need not be considered by the Court on a motion to dismiss.  Rather, Sexton must establish this defense through an evidentiary record at trial.  The allegations regarding Sexton's position as the CFO of FMC, the actions taken by him, the actions he acquiesced in and his

admissions, together taken in the light most favorable to the Committee, state a plausible claim for breach of fiduciary duty under New Hampshire law.

### 5.    Duties of a Director

Sexton also seeks dismissal of Count I as to the allegations that he breached his fiduciary duty as a director of FMC, on the grounds the complaint fails to allege any action by him as a director in violation of NH RSA 293-A:8.30.  Even if Sexton's contention regarding the lack of allegations of any affirmative acts by him as a director is true, directors have a responsibility under New Hampshire law to discharge their duties in good faith, with the care of an ordinary prudent person and in the best interests of the corporation.  NH RSA 293-A:8.30(a); Rosenblum, 99 N.H. at 271.  The complaint alleges numerous failures of the directors of FMC to discharge their duties in the required manner including authorizing the payment of illegal dividends (¶¶ 90, 117-118), the failure to implement any system of financial controls (¶¶ 92-93), and the failure to monitor and control the compensation of FMC's officers (¶ 98).  Such allegations place Sexton on fair notice of the claims against him and are sufficient to establish a plausible entitlement to relief.

### B.    Count II - Breach of Fiduciary Duty

Count II alleges that Patricia Foss, Jenifer Foss Smyth, David Rowell ("Rowell"), and Douglas Kinney ("Kinney") (collectively the "Count II Defendants"), as officers and/or directors of FMC, (1) breached their fiduciary duties to the corporation including the duties of care, loyalty, honesty, candor, and disclosure through various actions and failures to act specified in the complaint, and (2) breached their fiduciary duties to FMC's creditors because FMC was insolvent or in the "zone of insolvency" at the time of their alleged conduct.  The Count II

Defendants each seek dismissal of Count II on a number of grounds and the Committee opposes their motions.  The motions to dismiss Count II filed by the Count II Defendants shall be denied.

The Count II Defendants seek the dismissal of Count II based upon the doctrine of *in pari delicto*.  Count II in form and substance is identical to Count I except that it does not allege that any of the Count II Defendants falsified financial information or borrowing base certificates, and it does allege that the Count II Defendants failed to investigate allegations by an officer of FMC regarding faulty reporting systems and unethical behavior.  For the reasons discussed in section III.A.2 above, the *in pari delicto* defense is not a bar to the Committee's pursuit of claims against the Count II Defendants for breach of the fiduciary duty owed to FMC.  For the reasons discussed in section III.A.3 above, the Count II Defendants' motions to dismiss Count II because the Committee lacks standing to pursue a claim for a breach of fiduciary duty owed to FMC's creditors are also without merit.

The complaint alleges that the Count II Defendants, as directors of FMC, breached their fiduciary duty to the corporation by (1) failing to monitor the financial performance of the corporation or to maintain financial and accounting controls (¶¶ 8, 38-68, 75-81), (2) failing to adequately investigate the operations of FMC after being placed on notice by Sexton of irregularities (¶¶ 9, 82-91), (3) failing to implement controls or to prevent the misuse of corporate funds for the personal expenses of insiders (¶¶ 92-93), including excessive salaries and bonuses (¶¶ 94-98), payment of illegal dividends (¶¶ 117-118), payment of personal expenses of officers and directors and their families (¶¶ 99-111), and (4) authorizing or permitting transfers of corporate funds and assets to insiders for less than adequate consideration (¶¶ 120-124).  Such allegations place the Count II Defendants on fair notice of the claims against them and are sufficient to establish a plausible entitlement to relief.

C.      **Count III - Aiding and Abetting Breach of Fiduciary Duty**

Count III alleges that Foss, Sexton and Marcella Darling ("Darling") (collectively the "Count III Defendants") knowingly and willfully aided and abetted the breaches of fiduciary duty described in the complaint because they (1) were aware, or should have been aware of, the breach of fiduciary duty described in the complaint, (2) provided active assistance to the persons committing such wrongful acts, and (3) agreed to, encouraged, assisted, and/or directed the persons to commit such wrongful acts (¶ 145).  The Count III Defendants seek dismissal of Count III on a number of grounds and the Committee opposes their motions.  Foss and Sexton argue that Count III must be dismissed together with Count I.  For the reasons discussed in section III.A above, the motions to dismiss Count I shall be denied.  Accordingly, Count III shall not be automatically dismissed.  Darling argues that Count III should be dismissed because the Committee lacks standing to bring the claim, and the claim against her is barred by the *in pari delicto* doctrine.  For the reasons set forth in sections III.A.2 and III.A.3, her position is without merit.  The additional reasons advanced by the Count III Defendants are similarly unavailing and the motions to dismiss Count III filed by the Count III Defendants shall be denied.

1.      **Cause of Action for Aiding and Abetting Breach of Fiduciary Duty**

The Count III Defendants argue that the New Hampshire Supreme Court has not recognized an action for aiding and abetting a breach of fiduciary duty and that aiding and abetting is a criminal concept.  New Hampshire has recognized aiding and abetting liability in the context of civil actions.  Plante v. Engel, 124 N.H. 213, 217 (1983) (a person may be liable for damages on a conspiracy theory for combining with another to commit a civil wrong).  However, "the New Hampshire Supreme Court has yet to expressly consider whether to adopt the tort of aiding and abetting a breach of fiduciary duty."  Invest Almaz v. Temple-Inland Forest

Prods. Corp., 243 F.3d 57, 82 (1st Cir. 2001) (noting the magistrate judge had ruled that the New

Hampshire Supreme Court would recognize the tort and would hold a person liable for harm

resulting to a third party from the tortious conduct of another if the person "knows that the

other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to

the other" in connection with the breach of duty) (citing Restatement (Second) of Torts §

876(b)).  The majority of the courts that have considered the doctrine of aiding and abetting

liability, as set forth in the Restatement (Second) of Torts § 876(b), permit a claim for aiding and

abetting.  Richard C. Mason, Civil Liability for Aiding and Abetting, 61 Bus. Law 1135, 1139-

40 (2006) (indicating 30 of 34 jurisdictions permit a claim for aiding and abetting in some

context).  New Hampshire has recognized a claim for aiding and abetting in the context of

interference with custodial rights based upon important public policy considerations in

protecting the parent-child relationship, and the exercise of that relationship through the custody

of the child.  Plante, 124 N.H. at 216-17.

Under New Hampshire law, the duty of officers and directors to a corporation and its

shareholders is viewed as essentially the same as the duty of a trustee to a trust and its

beneficiaries.  Bartlett,128 N.H. at 513-14; Rosenblum, 99 N.H. at 271; Mica Products, 81 N.H.

at 471.  New Hampshire law recognizes the duty of a trustee to act in good faith, act solely in the

interests of the beneficiaries, not act for their personal benefit or in situations involving a conflict

of interest, and in general to act in a prudent manner.  See NH RSA 564-B:8-801 to 804.  New

Hampshire law also protects persons who in good faith deal with a trustee without knowledge

that a trustee is not properly exercising the trustee's powers.  See NH RSA 564-B:10-1012.

Under New Hampshire law, the recognition of a new cause of action is a two-step

process.  A court (1) "must first determine whether the interest that the plaintiffs assert should

21

receive any legal recognition," and (2) "if so, whether the relief that the plaintiffs request would be an appropriate way to recognize it." Aranson v. Schroeder, 140 N.H. 359, 364 (1995).  Based upon the New Hampshire Supreme Court's long-standing view that the duties of officers and directors of corporations are akin to the fiduciary duty of a trustee, its recognition of aiding and abetting claims in civil proceedings protecting important public policies such as child custody, and the requirements imposed on fiduciaries under New Hampshire law, this Court predicts that the New Hampshire Supreme Court would concur with the majority of jurisdictions that have considered the issue and recognize a claim for aiding and abetting in the context of a breach of fiduciary duty under the standards articulated in the Restatement (Second) of Torts § 876(b) and would find that the relief requested by the Committee is an appropriate remedy.

### 2. Sufficiency of Count III

Even if a claim for aiding and abetting a breach of fiduciary duty exists under New Hampshire law, the Count III Defendants challenge the sufficiency of the allegations in the complaint to state such a claim.  Sexton claims that a corporate officer or director is protected from liability as an officer or a director by the provisions of the NH BC Act, NH RSA 293-A:8.42(d) and NH RSA 293-A:8.30(d).  Darling claims that the failure of the complaint to allege that she owed any fiduciary duty to FMC requires dismissal of Count III as to her.  Foss adopts by reference Sexton's argument.  The Committee contends that the complaint alleges the necessary elements of aiding and abetting, namely (1) a breach of fiduciary duty, (2) knowing inducement or participation in the breach, and (3) damages.  Invest Almaz, 243 F.3d at 83; Restatement (Second) of Torts § 876(b).

The arguments of the Count III Defendants fail to recognize the nature of the claim for aiding and abetting.  Conspiracy and aiding and abetting have similar elements but are different

claims.  Conspiracy requires an agreement as well as an overt act causing injury.  Beck v. Prupis, 529 U.S. 494, 501 (2000).  Conspiracy requires the actual commission of a wrongful act giving rise to damages.  Id. at 501-03.  The agreement among co-conspirators is not in and of itself actionable but is the mechanism for subjecting all co-conspirators to liability for an act committed by one of them.  Id.  In some jurisdictions, a claim for civil conspiracy does not arise unless each conspirator owed the victim a duty not to commit the underlying wrongful act.  Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1133 (C.D. Cal. 2003).  However, "the act of aiding and abetting is distinct from the primary violation; liability attaches because the aider and abettor behaves in a manner that enables the primary violator to commit the underlying tort."  Id. at 1134 (citing Halberstam v. Welch, 705 F.2d 472, 478 (D.C. Cir. 1983)).

Therefore, the fact that a particular Count III Defendant may have had no fiduciary duty to FMC, or may not have violated a fiduciary duty that such defendant may have had to FMC, is not a defense to a civil claim for aiding and abetting.  The Committee states a claim if it alleges that a Count III Defendant (1) aided a party who breached a fiduciary duty that such party had to FMC, (2) knowingly and substantially provided assistance to such person, and (3) FMC suffered damages.  Invest Almaz, 243 F.3d at 83; Pittman by Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998); Restatement (Second) of Torts § 876(b).  The Committee has made such allegations in ¶¶ 15, 18, 20, 73-78 and 144-146.  Such allegations place the Count III Defendants on fair notice of the claims against them and are sufficient to establish a plausible entitlement to relief.

Sexton's motion to dismiss shall also be denied for two additional reasons.  First, his reliance on the arguments he raised in seeking dismissal of Count I is misplaced.  The claim of aiding and abetting is separate and distinct from any claim against Sexton based upon his actions

as an officer or a director of FMC.  Second, for the reasons discussed in sections III.A.4 and

III.A.5 above, to the extent that Count III of the complaint is based upon Sexton's acts or

conduct as an officer or a director of FMC, the complaint alleges that it was his failure to

discharge his duties as an officer and a director that caused damage to FMC.  Sexton's motion to

dismiss Count III based upon provisions in the NH BC Act shall be denied.

      **D.**      **Count IV - Waste of Corporate Assets**

Count IV alleges that the actions of Foss, Patricia Foss, Jenifer Foss Smyth, Sexton,

Rowell and Kinney, as directors of FMC, are responsible for the waste of assets of FMC by

permitting or causing excessive salaries, bonuses, preferred stock dividends and other expense

reimbursements and payments without a fair exchange of value.  All of the defendants named in

Count IV with the exception of Foss (collectively the "Count IV Defendants") have filed

motions to dismiss Count IV.  The motions to dismiss are based upon arguments that the

Committee does not have standing to bring the claims under Count IV and that such claims are

barred by the *in pari delicto* doctrine.  For the reasons set forth in section III.A.2 and III.A.3

above, the motions filed by the Count IV Defendants to dismiss Count IV based on a lack of

standing and the *in pari delicto* arguments shall be denied.

Sexton also argues that Count IV should be dismissed as to him because it does not allege

that he violated the standards of conduct for an officer or a director of a New Hampshire

business corporation as established in NH RSA 293-A:8.42(d) and NH RSA 293-A:8.30(d).  The

Committee opposes the motions to dismiss Count IV based upon several of the arguments it

raised in its opposition to the dismissal of Counts I, II and III.  For the reasons discussed in

section III.A.5 with respect to Count I and section III.C.2 with respect to Count III, Sexton's

motion to dismiss Count IV based upon his claim of compliance with the standards applicable to officers and directors under the NH BC Act shall be denied.

### E.    Count V - Unjust Enrichment

Count V alleges that Foss, Patricia Foss, Jenifer Foss Smyth, John Smyth, Sexton, Dennis Foss, Kinney, Foss Family LLC I, Foss Family LLC II, Foss Realty, Inc., Business Helicopters, Inc., Foss Family 2004 Irrevocable Trust and Custom Travel of New Hampshire, Inc. (collectively the "Count V Defendants" with the exception of Custom Travel of New Hampshire, Inc.) received property from FMC to which they were not entitled and have benefitted unjustly at FMC's expense.  The Count V Defendants seek dismissal of Count V based upon the Committee's failure to state a claim against an individual Count V Defendant for various reasons and because the equitable remedy of restitution for unjust enrichment is not available where a plaintiff has an adequate remedy at law.

The remedy of restitution is available to a plaintiff who can show that there was unjust enrichment either through the wrongful acts of the defendant or through passive acceptance by a defendant of a benefit that would be unconscionable to retain.  Petrie-Clemons v. Butterfield, 122 N.H. 120, 127 (1982); Nute v. Blaisdell, 117 N.H. 228, 232 (1977).  A claim of unjust enrichment is based upon a benefit conferred on the defendant, not on the existence of an agreement between the plaintiff and the defendant.  Presby v. Bethlehem Village District, 120 N.H. 493, 495 (1980) (unjust enrichment found where work done on the property of a third party benefitted the defendant); Petrie-Clemons, 122 N.H. at 127 (restitution available in addition to damages for breach of contract where wrongful conduct resulted in a benefit to the defendant which was unconscionable to retain).  Where the remedy sought is for breach of obligations imposed by law, as opposed to obligations arising from the receipt of a benefit which is unjust, a

claim of unjust enrichment does not lie.  Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 448 (1st Cir. 2000) (breach of obligations arising under § 524 of the Bankruptcy Code do not give rise to a claim for unjust enrichment); Pacamor Bearings, Inc. v. Minebea Co., Ltd., 892 F. Supp. 347, 357 (D.N.H. 1995) (claims under the Lanham Act and state unfair competition statutes do not give rise to a claim for unjust enrichment).

A plaintiff may seek a damages remedy at law (i.e., for breach of contract) and an equitable remedy (i.e., for unjust enrichment) in one complaint, so long as the claims are for different damages.  Compare Petrie-Clemons, 122 N.H. at 126-27 (contract damages and restitution permitted in one action), with Pacamor, 892 F. Supp. at 357 (profits obtained through alleged violations of federal and state statutes on competition were not a benefit for which restitution is appropriate where the statutes in question provided a damages remedy).  Simply because the Committee is bringing a claim for recovery on an alleged breach of a contract or statutory obligation, it is not precluded at this early stage of this adversary proceeding from seeking restitution for unjust enrichment in a separate count as an alternate claim.  Cincinnati Gas & Elec. Co. v. General Elec. Co., 656 F. Supp. 49, 68-69 (S.D. Ohio 1986); FRCP 8(e)(2). To the extent that Count V is an alternate equitable claim to a legal claim in another count, the Committee may be required prior to trial to make its election to seek a legal or an equitable remedy.  Cincinnati Gas, 656 F. Supp. at 68-69.  It appears that the factual allegations regarding the Committee's alternative legal and equitable claims are substantially similar.  Therefore, no undue burden will be imposed on any defendant during the pretrial discovery and preparation period.  Inconsistent alternative theories are not grounds for dismissal of Count V at this time. Id. at 69.  However, Count V shall be dismissed as to a particular defendant to the extent that the

Committee is seeking recovery for a claim that does not give rise to the equitable remedy of restitution under the specific facts as alleged in the complaint.  <u>Pacamor</u>, 892 F. Supp. at 357.

1.      **Stephen Foss, Foss Family LLC I, Foss Family LLC II, Foss Realty, Inc. and Business Helicopters, Inc. - Unjust Enrichment**

The unjust enrichment claims against Foss, Foss Family LLC I, Foss Family LLC II, Foss Realty, Inc., and Business Helicopters, Inc. (collectively the "Foss Defendants") appear to include authorization and receipt of illegal dividends (¶¶ 4(i), 117-118), insider loan repayments (¶¶ 4(ii), 116(a)), reimbursement for personal expenses (¶¶ 4(iii) and (iv), 104-109, 112-115), improvements to Foss's personal residence (¶ 4(v)), payments to various corporations and entities owned by Foss (¶¶ 4(vi)-(ix), 25-229, 112, 119-124), and excessive compensation (¶¶ 95-96).  The Committee may at this stage of the case bring Count V as an alternate claim for an equitable remedy to one or more of its counts seeking legal damages.  In addition, it may be able to seek both legal and equitable relief under the proper circumstances, so long as the claims are not duplicitive or based upon alleged breaches of statutory obligations.  The allegations regarding authorization of illegal dividends involve a breach of the statutory duties of a director and the damages for any such action is established under the NH BC Act.  NH RSA 293-A:8.33.  Accordingly, the motion to dismiss Count V as to Foss shall be granted as to any claim regarding authorization of illegal dividends and denied without prejudice to all other claims against the Foss Defendants.  They may seek dismissal of Count V as to one or more other claims prior to trial, if the Committee fails to elect a legal or equitable remedy for any such claim prior to that time.

2.      **Patricia Foss, Jenifer Foss Smyth, John Smyth and Foss Family 2004 Irrevocable Trust - Unjust Enrichment**

The unjust enrichment claims against Patricia Foss, Jenifer Foss Smyth, John Smyth and Foss Family 2004 Irrevocable Trust (the "Foss Family Defendants") appear to include authorization and receipt of illegal dividends (¶¶ 4(i), 117-118), improvements to personal residences (¶¶ 4(v), 99-103), and payments to various corporations and entities owned by them (¶¶ 4(vi), (vii) and (ix), 25-29, 112-115, 116, 119-124).  For the reasons discussed above, the Committee may at this stage of the case bring Count V as an alternate claim for an equitable remedy to one or more of its counts seeking legal damages.  In addition, it may be able to seek both legal and equitable relief under the proper circumstances, so long as the claims are not duplicitive or based upon alleged breaches of statutory obligations.  The allegations regarding authorization of illegal dividends involve a breach of the statutory duties of a director and the damages for such action are established under the NH BC Act.  NH RSA 293-A:8.33.  Accordingly, the motion to dismiss Count V as to Patricia Foss and Jenifer Foss Smyth shall be granted as to any claim regarding authorization of illegal dividends and denied without prejudice to all other claims against the Foss Family Defendants.  They may seek dismissal of Count V as to one or more other claims prior to trial, if the Committee fails to elect a legal or equitable remedy for any such claim prior to that time.

3.      **Kevin Sexton - Unjust Enrichment**

The unjust enrichment claims against Sexton appear to include authorization of illegal dividends (¶¶ 4(i), 117-118) and extraordinary payments beyond authorized compensation (¶¶ 4(vii), 94, 97-98).  Sexton contends that the complaint fails to state that the excess payments were made in the absence of a contract or that retention of such payments by him would be unconscionable.  The complaint alleges that Sexton received "extraordinary payments" from

28

FMC over and above his salary in the form of debt forgiveness ($30,000.00), a bonus outside of the ordinary time for a bonus ($24,000.00), payment of country club bills ($7,544.03), an unjustified pay raise ($53,601.60), consulting fees ($18,400.00), a service award ($25,000.00) and unused vacation pay ($5,520.00) and that such payments were not properly authorized by FMC's board of directors (¶¶ 97-98).  Such allegations, if true, would be sufficient to establish that such transfers or payments were not authorized and that retention of unauthorized transfers totaling $164,065.63 is unconscionable.  For the reasons discussed above, the Committee may at this stage of the case bring Count V as an alternate claim for an equitable remedy to one or more of its counts seeking legal damages.  In addition, the Committee may be able to seek both legal and equitable relief under the proper circumstances, so long as the claims are not duplicative or based upon alleged breaches of statutory obligations.  The allegations regarding authorization of illegal dividends involve a breach of the statutory duties of a director and the damages for such action are established under the NH BC Act.  NH RSA 293-A:8.33.  Accordingly, the motion to dismiss Count V as to Sexton shall be granted as to any claim regarding authorization of illegal dividends and denied without prejudice to all other claims.  Sexton may seek dismissal of Count V as to one or more other claims prior to trial, if the Committee fails to elect a legal or equitable remedy for any such claim prior to that time.

### 4.    Dennis Foss - Unjust Enrichment

The unjust enrichment claims against Dennis Foss appear to include receipt of illegal dividends (¶¶ 4(i), 117-118), receipt of additional unlawful distributions of property from FMC through loan repayments (¶ 128), and unlawful or inequitable distributions in connection with the redemption of stock in FMC (¶¶ 125-127, 172).  Unlike the claims against former directors of FMC for authorization of illegal dividends, the NH BC Act provides no statutory basis for

recovery of illegal dividends by a corporation from a shareholder.[4]  The complaint alleges
sufficient family and financial connections to FMC and the officers and directors of FMC (¶¶ 22,
125-128) to plausibly infer that Dennis Foss may have had access to information on the financial
condition of FMC to provide him with knowledge of the condition of the corporation at the time
various distributions were made and, therefore, that he knew or should have known, that the
distributions were unlawful.  Such allegations are sufficient to support a claim for unjust
enrichment at this stage of the case.  Accordingly, the motion to dismiss Count V against Dennis
Foss shall be denied.

### 5. Douglas Kinney - Unjust Enrichment

The unjust enrichment claims against Kinney appear to be limited to payment of fees and
expenses for services as a director of FMC (¶¶ 19, 111).  The complaint alleges that Kinney has
been a director of FMC since July 1, 2004, that he was paid a director's fee on July 22, 2004, and
was reimbursed for expenses as a director on August 17, 2004.  The complaint alleges that these
payments were "ostensible compensation for his services as director" (¶ 111).  FMC's payment
of fees and expenses to a director of the corporation during the time he served as a director,
without more, does not state a claim for unjust enrichment under New Hampshire law.  The
complaint is devoid of any allegation that Kinney did not serve as a director, that the fees and
expenses paid were contrary to FMC's policies or were unauthorized.  There is no allegation in
the complaint as to what time period or expenses were involved in the reimbursements.
Accordingly, the complaint does not state a claim against Kinney for unjust enrichment.  Petrie-

---

[4] Shareholders may be liable for a claim of contribution by a director who authorized such
distribution if the shareholder accepted the dividend knowing it was illegal.  NH RSA 293-A:8.33(b)(2).

Clemons, 122 N.H. at 127; Nute, 117 N.H. at 232.  The motion to dismiss Count V against Kinney shall be granted.

### F.    Count VI - Illegal Dividends

Count VI alleges that Foss, Patricia Foss, Jenifer Foss Smyth, Sexton, Rowell and Kinney, as directors of FMC (collectively the "Count VI Defendants"), authorized the payment of dividends contrary to the NH BC Act, specifically NH RSA 293-A:6.40.  The NH BC Act prohibits any distribution to shareholders if, after giving it effect, the corporation would not be able to pay its debts as they became due or it would be insolvent if dissolved.  NH RSA 293-A:6.40(c).  The NH BC Act provides a safe harbor for directors based upon ceratin financial statements and asset valuations.  NH RSA 293-A:6.40(d).  Directors who vote for or assent to an illegal distribution to shareholders are personally liable to the corporation for the amount that such distribution exceeded the amount that could have been legally distributed under the NH BC Act.  NH RSA 293-A:8.33.

The Count VI Defendants seek dismissal of Count VI on the basis that the Committee seeks recovery for dividends that were paid either when they were not a member of FMC's board of directors or more than two years before the date of filing of FMC's bankruptcy petition, i.e., before September 16, 2003.  NH RSA 293-A:8.33(c) (establishing a two-year statute of limitations).  The Committee does not dispute this contention.  Therefore, the complaint properly seeks recovery of illegal dividends authorized or acquiesced in by the Count VI Defendants during the following time periods:

| Defendant | Period as Director | Complaint |
|---|---|---|
| Stephen Foss | 9/16/2003 to 8/6/2005 | ¶ 15 |
| Patricia Foss | 7/1/2004 to present | ¶16 |
| Jenifer Foss Smyth | 7/1/2004 to present | ¶17 |
| Kevin Sexton | 9/16/2003 to 7/1/2004 | ¶18 |
| David Rowell | 9/16/2003 to 7/1/2004 | ¶23 |
| Douglas Kinney | 7/1/2004 to present | ¶19 |

Accordingly, the motions to dismiss Count VI shall be granted as to each individual Count VI Defendant to the extent that the complaint seeks recovery of dividends authorized outside the time periods the complaint alleges that each such defendant served as a director and the two-year statute of limitations.

Sexton and one or more other Count VI Defendants, by reference to the memorandum of law submitted by him in support of his motion to dismiss, argue that the complaint fails to state that any of the Count VI Defendants failed to perform their duties as a director under NH RSA 293-A:8.30, as required to state a claim under NH RSA 293-A:8.33(a). For the reasons set forth in section III.A.5 above, Sexton's motion to dismiss Count VI on this ground, as well as the motions of any other Count VI Defendant incorporating such argument by reference, shall be denied.

Foss and one or more of the Count VI Defendants, by reference to the memorandum of law submitted by him in support of his motion to dismiss, argue that the complaint fails to allege either equitable insolvency or balance sheet insolvency, at least one of which is required to establish liability under NH RSA 293-A:6.40(c). The Committee relies on ¶¶ 35 through 62 of its complaint for the required allegations of insolvency. Paragraph 36 alleges that the Debtor has been insolvent since 2001 either because it could not pay its debts as they became due in the

ordinary course or because its liabilities exceeded the fair value of its assets. Paragraphs 37

through 62 contain allegations regarding FMC's difficulties with its major lenders from 2001

until the petition date, including the continuing need to obtain overadvances under its credit

facility (¶¶ 43, 48, 49), consideration of bankruptcy in late 2002 (¶ 44), a demand by FMC's

lender for a personal guarantee of the overadvance (¶ 46), the necessity of raising as much as

$2,080,000.00 in subordinated debt capital to continue a revolving credit facility (¶¶ 50, 62,

128), and the failure to make required contributions to employee benefit plans (¶¶ 58-59). The

complaint need only set forth allegations under one of the two insolvency standards in NH RSA

293-A:6.40(c), a cash flow test (NH RSA 293-A:6.40(c)(1)) or a balance sheet test (NH RSA

293-A:6.40(c)(2)). The complaint contains sufficient allegations to establish a plausible

inference that FMC was insolvent within the meaning of NH RSA 293-A:6.40(c). Accordingly,

Count VI states a claim under NH RSA 293-A:6.40 for any dividends authorized on or after

September 16, 2003, i.e., within the two-year statute of limitations.

### G.    Count VII - Deepening Insolvency

Count VII alleges that Foss, Patricia Foss, Jenifer Foss Smyth, Sexton, Rowell and

Kinney (collectively the "Count VII Defendants") engaged in various breaches of their fiduciary

duties to FMC as directors and thereby prolonged the corporation's life, which caused the

corporation to incur more debt than if they had taken steps to close FMC's business or file

chapter 11 before the corporation's trade credit and working capital availability were cut off.

The Committee alleges that the failure of the Count VII Defendants to take such action has

injured the estate and its creditors by dissipating FMC's assets, extending its life beyond

viability and increasing its insolvency.

The Count VII Defendants argue that the "deepening insolvency" allegations in Count VII do not state a valid claim because such a cause of action does not exist under New Hampshire law.  In addition, even if the cause of action exists, they argue the Committee lacks standing to bring such a claim, the complaint does not adequately state a claim for deepening insolvency and the complaint fails to allege fraud with the specificity required by FRCP 9.  The Committee rejects all of the Count VII Defendants' arguments.

The Court must first address whether a cause of action for "deepening insolvency" exists under New Hampshire law.  Deepening insolvency has been described as "an injury to the Debtors' corporate property from the fraudulent expansion of corporate debt and the prolongation of corporate life."  Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 347 (3d Cir. 2001).  The elements of a cause of action for deepening insolvency are (1) fraud, (2) which causes the expansion of corporate debt, and (3) which prolongs the life of the corporation.  Id. at 344 (Pennsylvania would recognize an independent cause of action for deepening insolvency); see Seitz v. Detweiler, Hershey and Assoc. P.C. (In re CitX Corp.), 448 F.3d 672, 681 (3d Cir. 2006) (only fraudulent conduct will support a deepening insolvency claim under Pennsylvania law); Jo Ann J. Brighton, Deepening the Blows Against Deepening Insolvency? The Third Circuit's CitX Opinion and Post-CitX Opinions, 25-SEP Am. Bankr. Inst. J., Sept. 2006, at 24, 68.  The fraud requirement of a cause of action for deepening insolvency requires a plaintiff to allege and prove five elements:  "a representation of material fact, falsity, scienter, reliance and injury."  In re Oakwood Homes Corp., 340 B.R. 510, 534 (Bankr. D. Del. 2006) (quoting Vermeer Owners, Inc. v. Guterman, 585 N.E.3d 377, 378 (N.Y. 1991)).  A number of federal courts have questioned the recognition of deepening insolvency as an independent tort.  Oakwood, 340 B.R. at 528-30 (discussing the history of deepening

insolvency); <u>Kittay v. Atl. Bank of N.Y. (In re Global Serv. Group, LLC)</u>, 316 B.R. 451, 456-59

(Bankr. S.D.N.Y. 2004) (examining the historical derivation of the theory of deepening

insolvency).  If an independent cause of action for deepening insolvency exists, it must be

recognized under applicable state law.  <u>Oakwood</u>, 340 F.3d at 531.  None of the parties has cited

to any New Hampshire statute or state court decision that either supports or rejects a cause of

action for deepening insolvency, and the Court has not found any such authority.  Accordingly,

the Court "must don the soothsayer's garb and predict how [the state's highest court] would rule

if it were presented with the question."  <u>Lafferty</u>, 267 F.3d at 349.

      Part I, Article 14 of the New Hampshire Constitution provides:

> Every subject of this state is <u>entitled to a certain remedy</u>, by having
> recourse to the laws, <u>for all injuries he may receive in his</u> person,
> <u>property</u>, or character; to obtain justice freely, without being
> obliged to purchase it; completely, and without denial; promptly,
> and without delay; comfortably to the laws.

N.H. Const. pt. I, art. 14 (emphasis added).  "The purpose of this provision is to make civil

remedies readily available, and to guard against arbitrary and discriminatory infringements on

access to the courts."  <u>Town of Nottingham v. Newman</u>, 147 N.H. 131, 134-35 (2001) (quotation

omitted).  New Hampshire's public policy on the recognition of new causes of action, when

necessary to provide a remedy, is similar to Pennsylvania's public policy, which was a

significant factor in the Third Circuit's prediction that the highest court in Pennsylvania would

recognize an independent cause of action for deepening insolvency.  <u>Lafferty</u>, 267 F.3d at 351.

<u>See also</u> <u>Oakwood</u>, 340 F.3d at 533 (bankruptcy court predicted that the Delaware Supreme

Court would recognize the tort of deepening insolvency); <u>but see</u> <u>Trenwick Am. Litig. Trust v.</u>

<u>Ernst & Young, LLP</u>, 906 A.2d 168, 204-05 (Del. Ch. 2006) (Delaware law does not recognize a

cause of actions against directors for deepening insolvency).

35

The Court shall assume, without deciding, that the New Hampshire Supreme Court would apply the two-step test under <u>Aranson</u> described above in section III.C.1 and would recognize an independent tort for deepening insolvency pursuant to the analysis in <u>Lafferty</u> and <u>Oakwood</u> as the interests the Committee asserts in Count VII should receive legal recognition and the relief requested by the Committee is an appropriate way to recognize it.  <u>Aranson</u>, 140 N.H. at 364.  However, under <u>Aranson</u>, "[t]he analytical predicate to any consideration of [the recognition of a new cause of action under New Hampshire law] must be a determination that the relief sought is not obtainable by other existing remedies."  <u>Id.</u>

In other jurisdictions recognizing a cause of action for deepening insolvency, such actions have been brought against officers and director as well as outside corporate advisors.  <u>See, e.g.,</u> <u>CitX</u>, 448 F.3d at 674 (accounting firm and partner in charge); <u>Lafferty</u>, 267 F.3d at 344-45 (owner and family, accountant, attorney, independent underwriter and their counsel); <u>Oakwood</u>, 340 B.R. at 515 (debtor's banks); <u>Global Service</u>, 316 B.R. at 454 (debtor's bank and principals); <u>Trenwick</u>, 906 A.2d at 172 (independent directors and CEO director).  However, in this case, all of the Count VII Defendants were directors of FMC and are all alleged to have breached their fiduciary duty to FMC as directors in Counts I and II.  Causes of action against directors of a corporation, whether solvent or insolvent, for breach of fiduciary duty and fraud already exist.  <u>See</u> <u>Trenwick</u>, 906 A.2d at 205.

The Committee has failed to articulate why the existing causes of action against former directors of FMC for breach of fiduciary duty and fraud are not sufficient.  The Court need not address the issue, which is not before it, as to whether existing causes of action against non-officer or non-director defendants will be sufficient to withstand recognition of a cause of action for deepening insolvency under New Hampshire law when such a claim is made.  In this case,

the Court finds that the New Hampshire Supreme Court would not recognize a new cause of action for deepening insolvency based on the allegations in the complaint because existing causes of action for breach of fiduciary duty and fraud against the Count VII Defendants appear to provide the Committee with adequate remedies under existing law.  Accordingly, the Court need not consider any remaining arguments raised by the Count VII Defendants in support of their motions to dismiss Count VII.  C.f. Boles v. Filipowski (In re Enivid, Inc.), 345 B.R. 426, 453 (Bankr. D. Mass. 2006) (granting a motion to dismiss a deepening insolvency claim against officers and directors because the claims were subsumed within the breach of fiduciary duty claims in the same complaint).   The motions by the Count VII Defendants to dismiss Count VII shall be granted.

### H.      Count VIII - Equitable Subordination

Count VIII alleges that all of the conduct of all of the defendants, as alleged in the complaint, has resulted in injury to FMC and conferred unfair advantage on each of the defendants.  The Committee contends that any claim filed by any of the defendants against FMC should be equitably subordinated pursuant to 11 U.S.C. § 510(c).[5]  All of the defendants, except for Rowell and Custom Travel of New Hampshire, Inc., have moved to dismiss Count VIII on one or both of two grounds.  First, several defendants contend that they have not filed any claim against FMC and, therefore, there is no claim to subordinate and no relief available under 11 U.S.C. § 510(c).  Second, several defendants contend that the allegations in the complaint are insufficient to make out a claim for equitable subordination.

---

[5]  Unless expressly stated otherwise, in this opinion the terms "11 U.S.C.," "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 ("BAPCPA").

The Committee agrees that Foss, Sexton, Darling, John Smyth, Foss Family LLC I, Foss Family LLC II, Business Helicopters, Inc. and Foss Family 2004 Irrevocable Trust (collectively the "Non-Claim Defendants") have not filed claims.  In the absence of a claim which can be subordinated, Count VIII fails to state a claim against the Non-Claim Defendants.  Accordingly, Count VIII shall be dismissed, without prejudice, as to the Non-Claim Defendants.  Defendants Patricia Foss (Claim Nos. 204 and 600), Jenifer Foss Smyth (Claim Nos. 205 and 599), Rowell (Claim No. 472), Kinney (Claim No. 598), Dennis Foss (Claim Nos. 217 and 593), Custom Travel of New Hampshire, Inc. (Claim No. 581) and Foss Realty, Inc. (Claim No. 219) (collectively the "Claim Defendants") have all filed one or more claims.  Therefore, their respective motions to dismiss Count VIII may be granted only if the complaint fails to state a claim for equitable subordination against them.

"The essential purpose of equitable subordination is to undo any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of distribution of the estate."  In re Mid-American Waste, Inc., 284 B.R. 53, 68 (Bankr. D. Del. 2002) (citing Burden v. U.S., 917 F.2d 115, 117 (3d Cir. 1990).  The United States Supreme Court has cited with approval, and the First Circuit Court of Appeals has adopted, the standards for equitable subordination articulated by the Fifth Circuit in Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692 (5th Cir. 1977).  U.S. v. Noland, 517 U.S. 535, 538-39 (1996); Merrimack Paper Co., Inc. v. Harrison (In re Merrimack Paper Co., Inc.), 420 F.3d 53, 59 (1st Cir. 2005).  In order to exercise the power of equitable subordination, the bankruptcy court must find that:  (1) the creditor engaged in some type of inequitable conduct or fraud, (2) such conduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the creditor, and (3) equitable subordination of the claim must not be inconsistent with the

provisions of the Bankruptcy Code.[6]  Noland, 517 U.S. at 538; Mobile Steel Co., 563 F.2d 692 at 699-700; Merrimack Paper Co., 420 F.3d at 59; Capitol Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In re 604 Columbus Ave. Realty Trust), 968 F.2d 1332, 1359-60 (1st Cir. 1992).  "Claims arising from dealings between a debtor and an insider are rigorously scrutinized by the courts.  On the other hand, if the claimant is not an insider, 'then evidence of more egregious misconduct such as fraud, spoilation or overreaching is necessary.'"  604 Columbus Ave., 968 F.2d at 1360 (quoting In re Fabricators, Inc., 926 F.2d 1458, 1465 (5th Cir. 1991)).  While "fraud or misrepresentation are the most frequent justifications for equitable subordination of the noninsider" something less than actual fraud is sufficient.  Id.  Substantial misconduct involving moral turpitude or a breach or misrepresentation where other creditors were deceived to their damage or gross misconduct amounting to overreaching is sufficient.  Id.

Upon review of the complaint with respect to each of the three elements of equitable subordination, and for the reasons discussed below, Count VIII shall be dismissed as to Custom Travel of New Hampshire Inc. and Foss Realty, Inc. (the "Count VIII Corporate Creditors") and shall not be dismissed against Patricia Foss, Jenifer Foss Smyth, Kinney or Rowell.  In addition, Count VIII shall be dismissed as to the preferred stock dividend portion of Dennis Foss's claim and not dismissed as to the remaining elements of his claim.

### 1.    Patricia Foss - First Element

The complaint alleges that Patricia Foss breached her fiduciary duty as a director of FMC by failing to institute adequate financial controls or to monitor the financial condition of FMC, despite express statements by the CFO that should have put her on notice of potential problems

---

[6]  The adoption of § 510(c) of the Bankruptcy Code in 1978 may very well have rendered the third element of the Mobile Steel test moot.  Blasbalg v. Tarro (In re Hyperion Enters., Inc.), 158 B.R. 555, 560 (D.R.I. 1993); Diasonics, Inc. v. Ingalls, 121 B.R. 626, 628 (Bankr. N.D. Fla. 1990).

(¶¶ 8, 9, 16, 82-91).  In addition, the complaint alleges that Patricia Foss improperly received direct or indirect payments from FMC for personal expenses such as improvements to her personal residence, personal travel, improvements to her daughter's personal residence, and improper payments for the benefit of entities owned or controlled by her (¶¶ 4(v)-(vii), 4(ix), 99-103, 112-115).  It is undisputed that Patricia Foss is an insider of FMC.  11 U.S.C. § 103(31)(B)(i).  Accordingly, her dealings with FMC are subject to rigorous scrutiny.  The Court finds that the complaint's allegations regarding her failure to perform the basic duties of a director while FMC paid many of her personal expenses states a plausible claim against her for inequitable conduct, the first element of equitable subordination.

### 2.    Jenifer Foss Smyth - First Element

The complaint alleges that Jenifer Foss Smyth breached her fiduciary duty as a director of FMC by failing to institute adequate financial controls or to monitor the financial condition of FMC, despite express statements by the CFO that should have put her on notice of potential problems (¶¶ 8, 9, 17, 82-91).  In addition, the complaint alleges that Jenifer Foss Smyth improperly received direct or indirect payments from FMC for personal expenses such as improvements to her personal residence and personal travel (¶¶ 4(v)-(vi), 99-101, 103, 112-115).  It is undisputed that Jenifer Foss Smyth is an insider of FMC.  11 U.S.C. § 101(31)(B)(i).  Accordingly, her dealings with FMC are subject to rigorous scrutiny.  The Court finds that the complaint's allegations regarding her failure to perform the basic duties of a director while FMC paid many of her personal expenses states a plausible claim against her for inequitable conduct, the first element of equitable subordination.

### 3.      Douglas Kinney - First Element

The complaint alleges that Kinney breached his fiduciary duty as a director of FMC by failing to institute adequate financial controls or to monitor the financial condition of FMC, despite express statements by the CFO that should have put him on notice of potential problems (¶¶ 8, 9, 16, 82-91) and thereby permitted members of the Foss family, including his stepson John Smyth and daughter-in-law Jenifer Foss Smyth, to receive improper payments from FMC (¶¶ 19, 99-101, 114, 115).  It is undisputed that Kinney is an insider of FMC.  11 U.S.C. § 101(31)(B)(i).  The Court finds that the complaint's allegations regarding his failure to perform the basic duties of a director while FMC paid the personal expenses of his stepson and daughter-in-law states a claim against him for inequitable conduct, the first element of equitable subordination.

### 4.      Dennis Foss - First Element

The complaint alleges that Dennis Foss, Foss's brother, is an insider and received direct and indirect payments from FMC for loan repayments, illegal dividends, redemption of worthless FMC stock and payment of expenses for Foss Realty, Inc., an entity owned or controlled by him (¶¶ 4(i)-(ii), 22, 24, 118, 124(d), 125-128).[7]  As discussed in section III.E.4 above, the complaint states a claim that Dennis Foss had information at the time the alleged loan repayments, dividends and stock redemption agreements were made to know that such payments

---

[7]  In Count IX, the Committee is seeking to recharacterize the two promissory notes which form the basis of Dennis Foss's proofs of claim as equity rather than debt.  If either or both of those notes is recharacterized as equity, then equitable subordination of some or all of Dennis Foss's claim is no longer relevant.  Cohen v. KB Mezzanine Fund II, LP (In re Submicron Sys. Corp.), 432 F.3d 448, 454-55 (3d Cir. 2006); Aquino v. Black (In re AtlanticRancher, Inc.), 279 B.R. 411, 438 (Bankr. D. Mass. 2002).  In considering Dennis Foss's motion to dismiss Count VIII, the Court shall assume that Count IX is dismissed or that the Committee will not prevail at trial on Count IX.  Submicron, 432 F.3d at 455 (recharacterization must be resolved before consideration of equitable subordination).

were unlawful.  It is undisputed that Dennis Foss is Foss's brother, a former officer and director of FMC, and, therefore, is an insider of FMC.  11 U.S.C. § 101(31)(B)(vi).

The complaint does not allege that Dennis Foss breached any fiduciary duty to FMC or its creditors.  The complaint does not allege that Dennis Foss undertook any affirmative inequitable conduct or fraud.  Dennis Foss entered into a stock redemption agreement with FMC in August 2000, for 22.84% of FMC's common stock (the "Stock Redemption").  The complaint does not allege that at the time the Stock Redemption was first agreed upon, FMC was in default under any of its loan agreements or was in financial difficulty.[8]  The complaint does not state a claim that the Stock Redemption agreed upon in 2000, between Dennis Foss and FMC was wrongful or inequitable.  However, the complaint does allege that Dennis Foss's sole remedy in the event of a default under the noted dated April 25, 2001 (the "2001 Note") is conversion of the then-outstanding balance due back into common stock.  In the context of the obligation evidenced by the 2001 Note, such a remedy appears to be inconsistent with a debt obligation and more consistent with an obligation subordinated to debt in terms of the remedy for default.  See Racusin v. Am. Wagering, Inc. (In re Am. Wagering, Inc.), 465 F.3d 1048 (9th Cir. 2006) (claim based upon a final money judgment arising from a breach of contract to issue stock in payment for services is not subject to subordination because the the remedy for default is recovery of the unpaid debt).  Accordingly, the complaint does state a plausible claim for the first element of equitable subordination regarding the obligations arising from the Stock Redemption.

The complaint alleges that Dennis Foss loaned FMC $500,000.00 on February 27, 2004 (the "2004 Note"), in order to satisfy a condition by FMC's bank lender for additional

---

[8]  The earliest allegation of financial difficulties in the complaint is that FMC was overadvanced on its revolving loan agreement with its bank lender "no later than calendar year 2001."  ¶¶ 40-41.

investment into FMC in order to continue honoring corporate checks despite the overadvance under the revolving loan agreement (¶ 50). The complaint also alleges that Foss loaned FMC $1,000,000.00 at the same time for the same reason (¶¶ 48-50, 128). The complaint states a claim that at the time the $500,000.00 "loan" was made to FMC by Dennis Foss, the corporation was undercapitalized, at least in the opinion of its bank lender (¶¶ 48-50). If the corporation were undercapitalized, then the claim represented by the 2004 Note could be equitably subordinated to other debt. Pepper v. Litton, 308 U.S. 295, 309-10 (1939); Mobile Steel, 563 F.2d at 702. The corporation could be found undercapitalized if, at the time of the 2004 Note, a reasonably prudent person with background knowledge of FMC's business and the risks it faced, would determine that its capitalization was insufficient in February of 2004. Id. at 703. The allegations in the complaint regarding the general financial condition of FMC in early 2004, coupled with the allegations regarding the analysis of its condition by its then-primary bank lender are sufficient to support a plausible claim for subordination of the 2004 Note. Dennis Foss has filed a proof of claim (Claim No. 217, amended by Claim No. 593) for the amounts owed to him under the 2004 Note. Accordingly, the complaint does state a plausible claim against him at least for inequitable conduct in connection with the 2004 Note, the first element of equitable subordination.

The complaint does not allege any inequitable conduct by Dennis Foss in connection with his acquisition of the preferred stock of FMC or any allegation regarding actual or attempted control over the decisions of FMC regarding the preferred stock. Accordingly, the complaint does not state a claim for the first element of equitable subordination regarding the preferred stock dividend portion of his claim.

### 5. Custom Travel of New Hampshire, Inc. and Foss Realty, Inc. - First Element

Custom Travel of New Hampshire, Inc. has filed a proof of claim (Claim No. 581) for $4,200.00 of consulting fees due for the period July 1, 2005, through September 30, 2005.  Foss Realty, Inc. filed a proof of claim (Claim No. 219) for $806,377.03 on account of two claims. The first claim is for $663,397.26 representing the balance due for principal and interest, as of the petition date, on a promissory note dated August 16, 2001, for purchase money financing for real estate conveyed to FMC by Foss Realty, Inc.  The second claim is for $142,979.77 representing the balance due for principal and interest, as of the petition date, on funds advanced by Foss Realty, Inc. to FMC on August 31, 2001.  The purpose of the advance of funds which support the second part of the claim is not disclosed.

The complaint does not allege any wrongful or fraudulent conduct on the part of the Count VIII Corporate Creditors.  There are no allegations in the complaint that the fees which form the basis for the claim of Custom Travel of New Hampshire, Inc. were fraudulent or wrongful.  There are no allegations that either of the obligations which constitute the elements of the claim of Foss Realty, Inc. were fraudulent or wrongful.  Accordingly, the complaint does not state a claim for the first element of equitable subordination against the Count VIII Corporate Creditors.

### 6. Remaining Count VIII Defendants - Second Element

The second element of equitable subordination is whether the conduct of the defendant creditor resulted in injury to the creditors of FMC or conferred an unfair advantage on the creditor.  The Court's review of the second element shall be limited to those claims for which the complaint has satisfied the first element of equitable subordination.  The complaint alleges that as a result of the wrongful conduct by Patricia Foss, Jenifer Foss Smyth, Kinney, and Dennis

Foss, FMC lost millions of dollars through payment of illegal dividends, excessive compensation and expense reimbursement, wrongful payment of personal expenses for insiders and wrongful payments to or for the benefit of entities owned by insiders (¶¶ 1, 2, 4, 8, 92-110, 112-115, 117-118), all of which allegedly damaged FMC.  The complaint states a plausible claim for the second element of equitable subordination against the remaining Count VIII defendants.

**7.       Remaining Count VIII Defendants - Third Element**

The third element of equitable subordination is whether subordination would be inconsistent with the provisions of the Bankruptcy Code.  None of the defendants contend that subordination of claims held by insiders for breach of fiduciary duty or other inequitable conduct is contrary to the provisions of the Bankruptcy Code.  Subordination of claims based upon the alleged conduct of the remaining Count VIII defendants is consistent with the traditional principles of equitable subordination, codified at 11 U.S.C. § 510(c), to the extent that the third element of the <u>Mobile Steel</u> test has not been rendered moot by the enactment of § 510(c) of the Bankruptcy Code.  The complaint states a plausible claim for the third element of equitable subordination.

**I.       Count IX - Recharacterization**

Count IX alleges that the claim of Dennis Foss should be recharacterized by the Court as equity rather than debt.  The claim of Dennis Foss is stated in Claim No. 217, as amended by Claim No. 593, and consists of three parts.  The first part is a claim under the 2001 Note for principal and interest in the amount of $5,047,915.36 due, as of the Petition Date.  The second part is a claim under the 2004 Note for principal and interest in the amount of $334,384.34 due, as of the Petition Date.  The third part is a claim for accrued but unpaid dividends in the amount of $363,412.50 on FMC's Series A Preferred Stock (the "Stock Dividend").  Dennis Foss

contends that Count IX must be dismissed as to the 2001 Note and the Stock Dividend claims for one or more of three arguments:  (1) the claim for recharacterization is barred by the statute of limitations, (2) the complaint fails to state a claim for recharacterization under the test adopted in In re Micro-Precision Techs., Inc., 303 B.R. 238 (Bankr. D.N.H. 2003), and (3) the NH BC Act, NH RSA 293-A:6:40(f), provides that indebtedness such as the 2001 Note is treated at parity with the corporation's general unsecured debt, unless agreed otherwise.  Dennis Foss argues that Count IX must be dismissed as to the 2004 Note for the second reason that it should be dismissed as to the 2001 Note.  The Committee disputes the existence of any statute of limitations and contends that the complaint states a claim under the Micro-Precision test.

Although the Bankruptcy Code does not expressly authorize the recharacterization of claims, the parties do not dispute that the bankruptcy court has the the power to recharacterize claims.  Every circuit court that has considered the issue has upheld the power of the bankruptcy court to recharacterize claims.  Fairchild Dornier GMBH v. Official Committee of Unsecured Creditors (In re Official Committee of Unsecured Creditors for Dornier Aviation (North Am.), Inc.), 453 F.3d 225, 231 (4th Cir. 2006); Cohen v. KB Mezzanine Fund II, LP (In re Submicron Sys. Corp.), 432 F.3d 448, 455 (3d Cir. 2006); Sender v. The Bronze Group, Ltd. (In re Hedged-Investments Assoc., Inc.), 380 F.3d 1292, 1298 (10th Cir. 2004); Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.), 269 F.3d 726, 748 (6th Cir. 2001); Estes v. N&D Props., Inc. (In re N&D Props., Inc.), 799 F.2d 726, 733 (11th Cir. 1986); contra Unsecured Creditors' Committee of Pacific Express, Inc. and Pacific Express Holding, Inc. v. Pioneer Comm. Funding Corp. (In re Pacific Express, Inc.), 69 B.R. 112, 115 (9th Cir. B.A.P. 1986).  This Court agrees with and adopts the Fourth Circuit's analysis of the Bankruptcy Code's claims allowance and payment provisions.  Dornier, 453 F.3d at 231-33.  Recharacterization "is well within the broad

46

powers afforded a bankruptcy court in § 105(a) and facilitates the application of the priority

scheme laid out in § 726." Id. at 231. The Fourth Circuit's analysis of the powers of the

bankruptcy court to recharacterize a debt as equity under § 105(a) is consistent with the First

Circuit's views regarding the use of that section by the bankruptcy courts. Noonan v. Sec'y of

Health and Human Servs. (In re Ludlow Hospital Society), 124 F.3d 22, 28 (1st Cir. 1997) (a

bankruptcy court may invoke § 105(a) if the equitable remedy utilized is demonstrably necessary

to fulfill a specific provision of the Bankruptcy Code).

      The Committee has brought claims against Dennis Foss for equitable subordination and

recharacterization. Although the two claims result in similar economic consequences, they are

separate and distinct causes of action. Aquino v. Black (In re AtlanticRancher, Inc.), 279 B.R.

411, 433 (Bankr. D. Mass. 2002). "In a recharacterization analysis, if the court determines that

the advance of money is equity and not debt, the claim is recharacterized and the effect is

subordination of the claim 'as a proprietary interest because the corporation repays capital

contributions only after satisfying all other obligations of the corporation.'" Id. (citations

omitted). Recharacterization of a claim is appropriate where the circumstances show that an

apparent debt transaction was actually an equity contribution *ab initio*. AutoStyle, 269 F.3d at

747-48. Equitable subordination is appropriate when due to the misconduct of a creditor, the

creation of their debt is inequitable *vis-a-vis* other creditors. Blasbalg v. Tarro (In Hyperion

Enters., Inc.), 158 B.R. 555, 561 (D.R.I. 1993). "While a bankruptcy court's recharacterization

decision rests on the *substance of the transaction* giving rise to the claimant's demand, its

equitable subordination decision rests on its assessment of the *creditor's behavior*." Dornier,

453 F.3d at 232 (emphasis in the original).

### 1.    Statute of Limitations

Dennis Foss contends that the recharacterization of his claim on the 2001 Note is barred by the statute of limitation.  However, he fails to cite to any authority for his contention.  Since Count IX is a recharacterization claim brought under the Bankruptcy Code, as part of seeking a determination from the Court regarding the proper treatment of the obligations of FMC described in his claims, for purposes of distribution from the bankruptcy estate, this Court discerns no applicable statute of limitations justification for dismissal of Count IX.

### 2.    Failure to State a Claim for Recharacterization

The Sixth Circuit Court of Appeals has considered recharacterization under a test consisting of eleven factors.[9]  However, the courts in the First Circuit have not utilized that test because in their view it suggests that undercapitalization alone may be sufficient to justify recharacterization of debt as equity.  AtlanticRancher, 279 B.R. at 434; Hyperion, 158 B.R. at 561.  This Court concurs with these First Circuit decisions.  Undercapitalization alone is insufficient, without something more, to trigger recharacterization of debt as equity.  Regardless of the standard used "[n]o one factor is controlling or decisive" and "'[t]he more [a transaction] appears to reflect the characteristics of . . . an arm's length negotiation, the more likely such a transaction is to be treated as debt.'"  Micro-Precision, 303 B.R. 246-47.  This approach is

---

[9]  The factors are:  (1) the names given to the instruments, if any, evidencing the indebtedness, (2) the presence or absence of a fixed maturity date and a schedule of payments, (3) the presence or absence of a fixed rate of interest and interest payments, (4) the source of repayments, (5) the adequacy or inadequacy of capitalization, (6) the identity of interest between the creditor and the stockholder, (7) the security, if any, for the advances, (8) the corporation's ability to obtain financing from outside lending institutions, (9) the extent to which the advances were subordinated to the claims of outside creditors, (10) the extent to which the advances were used to acquire capital assets, and (11) the presence or absence of a sinking fund to provide repayments.  AutoStyle, 269 F.3d at 749-50 (citing Roth Steel Tube Co. v. Comm'r, 800 F.2d 625, 630 (6th Cir. 1986)).

consistent with prior recharacterization decisions in this district.[10]  Accordingly, the Court shall

focus on the factors employed by the courts in the <u>Micro-Precision</u>, <u>AtlanticRancher</u> and

<u>Hyperion</u> decisions.  Those factors are:

1.  the adequacy of capital contributions;

2.  the ratio of shareholder loans to capital;

3.  the amount or degree of shareholder control;

4.  the availability of similar loans from outside lenders;

5.  certain relevant questions, such as:

    a.  whether the ultimate financial failure was caused by
undercapitalization;

    b.  whether the note included payment provisions and a fixed maturity
date;

    c.  whether the note or other debt document was executed;

    d.  whether advances were used to acquire capital assets; and

    e.  how the debt was treated in the business records.

<u>Micro-Precision</u>, 303 B.R. at 246; <u>Hyperion</u>, 158 B.R. at 561; <u>AtlanticRancher</u>, 279 B.R. at 434.

For the reasons discussed below, the Court shall grant the motion to dismiss Count IX. as to the

Stock Dividend portion of Dennis Foss's claim and deny the motion as to the 2001 Note and the

2004 Note portions of his claim.

---

[10]  "I do not believe however that bankruptcy judges have a warrant from Congress to run roughshod over the economic landscape recharacterizing commercial transactions entered into by sophisticated parties–restating them in terms of their 'economic substance' contrary to their negotiated and agreed form–in the absence of some *triggering factor* permitting such recharacterization, i.e. an actual ambiguity in the documents, a substantial factual dispute as to the intent of the parties, or some 'disguise' or 'misleading' aspect of the transaction."  <u>Chicoine v. Omne Partners II (In re Omne Partners II)</u>, 67 B.R. 793, 797 (Bankr. D.N.H. 1986) (refusing to recharacterize a sale-leaseback transaction as a mortgage).

### a.       The 2001 Note

The 2001 Note amended and restated an obligation originally evidenced by a promissory note dated August 15, 2000, issued in partial payment for a redemption of 55.5 shares of FMC's common stock then held by Dennis Foss, the Stock Redemption.  The Stock Redemption apparently redeemed all of the shares of common stock in FMC owned by Dennis Foss, or approximately 22.84% of all outstanding shares.  The original promissory note was issued at a stated interest rate of 7.5% and was payable over a twenty-four month period in accordance with a payment schedule attached to the note.  When FMC was unable to make the payments when scheduled, the 2001 Note was issued to reflect an agreement to amend the terms of the original note.  The 2001 Note provided for interest at the stated rate of 7.5%, payable monthly, with scheduled payments of principal beginning July 15, 2001, and ending on October 15, 2004. Under the original obligation, $3,481,600.00 was due and payable by January 15, 2003.  Under the 2001 Note, $2,828,799.87 of the $3,981,600.00 in principal owed on April 25, 2001, or 71% of the principal owed, was rescheduled to be due after the original maturity date of January 15, 2003.  The purpose of the 2001 Note was to restructure the August 2000 obligation of FMC to Dennis Foss in connection with the complete redemption of his common stock in the corporation.  The original promissory note had the apparent effect of converting his equity interest in FMC into debt.  However, the complaint does allege that Dennis Foss's sole remedy in the event of a default under the 2001 Note is conversion of the then-outstanding balance due back into common stock.  The terms of the 2001 Note are consistent with a debt instrument, but the remedy for default is inconsistent with a debt instrument.  The alleged sole remedy renders the redemption effective only to the extent that periodic payments are actually made.  In effect, the terms of the 2001 Note could be plausibly construed to amount to a creeping redemption.

The complaint alleges that Dennis Foss is Foss's brother and is a preferred stockholder of FMC.  Therefore, he is an insider.  However, the complaint does not allege that Dennis Foss had or exercised any control over the operations of FMC.  The complaint alleges that in February 2004, FMC was overadvanced on its revolving credit line and that its bank lender refused to extend the revolving credit temporarily to permit FMC to find a new lender without additional investments by FMC's "insiders."  In response to that demand, Foss loaned FMC $1,000,000.00 and Dennis Foss loaned FMC $500,000.00 as evidenced by the 2004 Note.  In section III.H.4 above, the Court found that the complaint did not allege that at the time of the Stock Redemption in 2000, FMC was in default of any of its obligations or in financial difficulty.  The complaint does allege financial difficulties in 2001, and the agreement that resulted in the issuance of the 2001 Note necessarily implies some degree of financial difficulty at that time.

The 2001 Note appears to constitute an indebtedness of FMC to a shareholder in relation to the distributions to Dennis Foss of the Stock Redemption in August 2000.  If the distribution of cash and the original promissory note in August 2000 did not render FMC insolvent at that time, the NH BC Act requires that such indebtedness be treated as a general unsecured obligation.  NH RSA 293-A:6.40(f).  The complaint does not contain any allegation that the rescheduling of FMC's indebtedness by the 2001 Note did anything to alter the nature of the initial distribution.  However, the sole remedy in the event of a default under the 2001 Note is conversion of the then-outstanding balance due back into common stock.  In the context of the obligation evidenced by the 2001 Note, such a remedy appears to be inconsistent with a debt obligation.  See Racusin v. Am. Wagering, Inc. (In re Am. Wagering, Inc.), 465 F.3d 1048 (9th Cir. 2006) (claim based upon a final money judgment arising from a breach of contract to issue stock in payment for services is not subject to subordination because the the remedy for default

is recovery of the unpaid debt).  In the absence of any allegation that the 2001 Note adversely impacted the financial condition of FMC in April 2001, or any allegation that the original distributions in August 2000 in redemption of Dennis Foss's common stock violated the provisions of NH RSA 293-A:6.40(c), the complaint does not state a claim for recharacterizing the 2001 Note as equity.  However, the alleged sole remedy under the terms of the 2001 Note raises a plausible inference that the parties to the 2001 Note viewed the unpaid balance as an equity investment.  Accordingly, the complaint states a plausible claim for recharacterization of the 2001 Note.

### b.      The 2004 Note

The 2004 Note evidences a loan from Dennis Foss to FMC at a time the corporation was in financial distress and required capital in order to continue the overadvance on its revolving loan agreement with its bank lender.  The 2004 Note contains a stated interest rate of 6.0%, payable monthly, with principal payable on demand.  The 2004 Note is expressly subordinated to FMC's obligations to its bank lender.  The complaint alleges that Dennis Foss was an insider, preferred shareholder and unsecured creditor of FMC at the time he made the $500,000.00 loan evidenced by the 2004 Note.  The complaint alleges that the loan was made in response to demands from FMC's bank for additional capital, subordinated to the bank's position, in order to permit further overadvance on FMC's revolving credit facility.

The allegations in the complaint state a claim that, at the time Dennis Foss made the loan evidenced by the 2004 Note, FMC was undercapitalized, could not obtain additional capital from outside lenders absent infusion of subordinated debt by insiders, and that the reasons for the overadvance in 2004 lead to the ultimate financial collapse of the corporation.  The terms of the 2004 Note result in its classification, at best, as subordinated unsecured debt and, at worst, as the

economic equivalent of preferred stock.  When the loan evidenced by the 2004 Note was made, Dennis Foss was a preferred shareholder of FMC.  The Court finds that the complaint states a plausible claim that the loan evidenced by the 2004 Note was viewed as or intended to be treated as equity.  Accordingly, the complaint states a claim for recharacterization of the 2004 Note.

### 3.      The Stock Dividend

The third part of Dennis Foss's claim arises from cumulative unpaid dividends on preferred stock of FMC, the Stock Dividend.  The complaint contains no allegation that the preferred stock in question was issued at a time that FMC was in default of its obligations, that FMC was insolvent or that the Stock Dividend was not a legitimate method of capitalizing the corporation.  Accordingly, the obligation for the Stock Dividend incurred by FMC under the terms of its outstanding preferred stock at the date of issuance appears to have been made in compliance with NH RSA 293-A:6.40.  The allegations in the complaint and the facts alleged in Dennis Foss's proof of claim suggest that the corporation did not pay preferred stock dividends for a number of years prior to the Petition Date.  The allegations in the complaint support a conclusion that the restrictions in NH RSA 293-A:6.60(c) prevented the payment of such dividends.  Accordingly, the Court finds that the complaint fails to state a claim for recharacterization of the Stock Dividend portion of Dennis Foss's claim.

### J.      Avoidable Transfer Counts

The complaint contains numerous counts seeking to avoid various transfers to or on behalf of various defendants as being preferential and/or fraudulent under 11 U.S.C. §§ 544, 547, and 548, and applicable state law as set forth in NH RSA 545-A:4(I)(b), 5(I), and 5(II).  The complaint seeks recovery for such avoidable transfers pursuant to 11 U.S.C. § 550.  To establish a preference claim under the Bankruptcy Code, the Committee must prove the following:

1.    The Debtor transferred an interest in property of the Debtor;

2.    To or for the benefit of a creditor;

3.    For or on account of an antecedent debt owed by the Debtor before such transfer was made;

4.    Made while the Debtor was insolvent;

5.    On or within ninety days of the date of the filing of the petition or between ninety days and one year before the date of the filing of the petition if the creditor was an insider at the time of the transfer; and

6.    That enables such creditor to receive more than such creditor would receive if the case were a case under chapter 7, the transfer had not been made, and such creditor received payment of such debt to the extent provided by the provisions of title 11.

11 U.S.C. § 547(b); Ford v. Skorich (In re Skorich), 337 B.R. 441, 444-45 (Bankr. D.N.H. 2006).

The Bankruptcy Code also contains a provision in 11 U.S.C. § 548 for avoiding fraudulent transfers, which permits a trustee to avoid a transaction, made within one year before the commencement of the bankruptcy case, that depletes a debtor's assets to the detriment of the bankruptcy estate.[11]  The statute recognizes as fraudulent those transfers made with actual intent to hinder, delay or defraud creditors as well as those that are deemed to be constructively fraudulent because they are made for less than reasonably equivalent value, when the debtor is, or is rendered, insolvent, undercapitalized, or unable to pay its debts as they become due.  Dahar v. Jackson (In re Jackson), 318 B.R. 5, 22 (Bankr. D.N.H. 2004) (quoting King et al., Collier on Bankruptcy ¶ 548.01 (15th rev. ed. 1998)); see also Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254 (1st Cir. 1991) ("The transfer of any interest in the property of a debtor, within one year of the filing of a petition in bankruptcy, is voidable by the

---

[11]  BAPCPA amended 11 U.S.C. § 548(a) and (b) to extend the coverage of those sections to transfers occurring two years before the petition date for cases commenced on or after April 20, 2006, one year after the date of enactment of BAPCPA.

trustee in bankruptcy if the purpose of the transfer was to prevent creditors from obtaining

satisfaction of their claims against the debtor by removing the property from their reach.");

Richardson v. United States (In re Anton Noll, Inc.), 277 B.R. 875, 878 (B.A.P. 1st Cir. 2002).

To establish a fraudulent transfer claim under the Bankruptcy Code, the Committee must prove:

1.    The Debtor transferred an interest in property of the Debtor or incurred an obligation, including any transfer or obligation to or for the benefit of an insider under an employment contract;

2.    Within one year prior to the filing of the bankruptcy petition;

3.    With actual intent to hinder, delay, or defraud any creditor; or

4.    The Debtor received less than reasonably equivalent value and

    a.    The transfer was made or obligation was incurred while the Debtor was insolvent or the Debtor was rendered insolvent by the transfer or obligation; or

    b.    The property remaining with the Debtor was an unreasonably small capital; or

    c.    The Debtor intended to incur debts that it would be unable to pay as they became due; or

    d.    The Debtor made such a transfer or incurred such an obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(A) and (B); see Jackson, 318 B.R. at 22-23; Schreiber v. Emerson (In re

Emerson), 244 B.R. 1, 37 (Bankr. D.N.H. 1999); Breeden v. L.I. Bridge Fund, LLC (In re

Bennett Funding Group, Inc.), 232 B.R. 565, 570 (Bankr. N.D.N.Y. 1999); Ferrari v. Bar-Land

Corp. (In re Zenox), 173 B.R. 46, 48 (Bankr. D.N.H. 1994).  The Committee seeks to apply 11

U.S.C. § 548(a)(1)(B), the constructive fraud provision of the Bankruptcy Code, to avoid FMC's

transfers to the various defendants, and not 11 U.S.C. § 548(a)(1)(A), the actual fraud provision

of the Bankruptcy Code.

The Plaintiff also asserts claims under 11 U.S.C. § 544(b), the Bankruptcy Code provision permitting the avoidance of transfers that are voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).  The "applicable law" referred to in 11 U.S.C. § 544(b) includes New Hampshire's version of the Uniform Fraudulent Transfer Act (the "UFTA"), found in NH RSA 545-A.  The UFTA is similar to 11 U.S.C. § 548 of the Bankruptcy Code, Emerson, 244 B.R. at 38, and it defines transfers that are fraudulent as to present and future creditors as follows:

545-A:4  Transfers Fraudulent as to Present and Future Creditors.

I.      A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a)     With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b)     Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1)     Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2)     Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

NH RSA 545-A:4(I)(a) and (b).

545-A:5  Transfers Fraudulent as to Present Creditors.

I.      A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the

> transfer or obligation and the debtor was insolvent at that time or the
> debtor became insolvent as a result of the transfer or obligation.

> II.    A transfer made by a debtor is fraudulent as to a creditor whose
> claim arose before the transfer was made if the transfer was made
> to an insider for an antecedent debt, the debtor was insolvent at
> that time, and the insider had reasonable cause to believe that the
> debtor was insolvent.

NH RSA 545-A:5(I) and (II).  Thus, under UFTA, transfers may be found fraudulent if made

with actual intent to defraud (i.e., "actual" fraud claims under NH RSA 545-A:4(I)(a)), or if

made under circumstances which, in the absence of actual fraud, are deemed fraudulent (i.e.,

"constructive" fraud claims under NH RSA 545-A:4(I)(b) and 545-A:5(I) and (II)).  Again, the

Committee seeks only to avoid constructive fraud claims under NH RSA 545-A:4(I)(b) and NH

RSA 545-A:5(I) and (II), not actual fraud claims under NH RSA 545-A:4(I)(a).  Unlike actual

fraud, constructive fraud is essentially unconcerned with intent and instead focuses upon

economic effect and involves an analysis of objective factors.  Jackson, 318 B.R. at 13, 18.

Pursuant to 11 U.S.C. § 550(a), the Committee seeks to impose liability upon the

transferees of any transfers that are avoidable under 11 U.S.C. §§ 544, 547, or 548.  Section

550(a) specifically provides:

> Except as otherwise provided in this section, to the extent that a transfer is
> avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the
> trustee may recover, for the benefit of the estate, the property transferred, or, if
> the court so orders, the value of such property, from–

> > (1) the initial transferee of such transfer or the entity for whose benefit
> > such transfer was made; or

> > (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a)(1) and (2).  Section 550(a) defines the party from whom a trustee, or the

Committee in this case, may seek to recover the property preferentially or fraudulently

transferred or the value or proceeds of such property.  Anton Noll, 277 B.R. at 878; Crafts Plus+,

Inc. v. Foothill Cap. Corp. (In re Crafts Plus+, Inc.), 220 B.R. 331, 334 (Bankr. W.D. Tex. 1998).  It "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee."  Crafts Plus+, 220 B.R. at 334 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 375-376 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 90 (1978)).

### K.    Counts X to XIII - Avoidance of Fraudulent Transfers and Conveyances as to Defendant Stephen Foss

The Committee seeks to avoid and to recover various transfers as being fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Count X), 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(I) (Count XI), 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(II) (Count XII), and 11 U.S.C. §§ 548 and 550 (Count XIII).  Foss seeks to dismiss the fraudulent transfer claims in Counts X through XIII on two grounds:  (1) the Committee failed to plead any facts to support its assertion that the company was insolvent, and (2) the Committee's allegations of transfers by the Debtor to third-parties do not state a claim against Foss.  Foss's motion to dismiss Counts X through XIII shall be denied.

### 1.    Failure to Adequately Plead Insolvency

As described above, the elements of fraudulent transfer claims vary depending upon the specific statute, but in general, each requires an allegation of a transfer of the debtor's property that was made, while the debtor was insolvent, undercapitalized or unable to pay its debts as they matured, for which the debtor received less than reasonably equivalent value.  The "insolvency" requirement is set forth specifically at NH RSA 545-A:4(I)(b)(1) and (2), NH RSA 545-A:5(I) and (II), and 11 U.S.C. § 548(a)(B)(ii)(I), (II), and (III).  In the complaint, the Committee alleges in Count X at ¶ 179 that "[a]t the time of each of such transfers, the Debtor (i) was engaged or was about to be engaged in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or (ii) intended to

incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due," in Count XI at ¶ 186 that "[t]he Debtor was insolvent at the time that each such transfer was made or became insolvent as a result of the making of such transfer," in Count XII at ¶ 192 that "[a]t the time of each of such transfers, the Debtor was insolvent and Defendant Stephen Foss had reasonable cause to believe that the Debtor was insolvent," and in Count XIII at ¶ 200 that "[a]t the time of each transfer, the Debtor (i) was insolvent or became insolvent as a result of such transfers, (ii) was engaged in business for which its remaining property was an unreasonably small capital, or (iii) intended to incur, or believed it would incur, debts that were beyond its ability to repay as they matured."

Foss argues that such bald assertions of insolvency are not enough to defeat his motion to dismiss for failure to state a claim.[12]  Rather, he contends that the Committee was obligated to plead specific facts sufficient to support its allegation of insolvency.  See Prod. Res. Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 782 (Del. 2004) (indicating that to meet the burden to plead insolvency, as required to state a claim for the appointment of a receiver for a corporation, the plaintiff must plead facts that show that the corporation has either (1) a deficiency of assets below liabilities, with no reasonable prospect that the business can be successfully continued in the face thereof, or (2) an inability to meet maturing obligations as they fall due in the ordinary course of business).

In response, the Committee states that the complaint at ¶¶ 35 to 62 details the Debtor's financial difficulties since 2001 and alleges acts that contributed to the Debtor's continued operation beyond the point of insolvency.  Specifically, in ¶ 36 the Committee alleges that

---

[12] Foss acknowledges there is a presumption that FMC was insolvent for the 90-day period immediately preceding the date of the Debtor's bankruptcy filing which applies to preference claims pursuant to 11 U.S.C. § 547(f).

"[s]ince at least 2001, if not earlier, the Debtor has been insolvent either because it was unable to pay its debts as they became due in the ordinary course of business, or because its probable liabilities exceeded the fair value of its assets, or both.  In addition, at all material times hereto, the Debtor was engaged in business without adequate capital and/or was incurring debts beyond its ability to repay them when due."  The Committee further alleges in ¶ 37 that "[t]he Debtor sustained itself throughout this time frame by operating on credit, in the form of asset-based revolving credit lines and open account trade credit extended by suppliers of goods and services."  The Committee also states in ¶ 60 that "[t]he manipulations of the Debtor's inventory and accounts receivable masked the long-standing fact that the Debtor was insolvent and a huge credit risk, and allowed the Debtor to continue to prolong its business operations far beyond the point of viability."  The Committee contends that FRCP 9(b) does not require detailed statements regarding insolvency for fraudulent transfer claims but, even if it did, the complaint pleads insolvency with particularity.  See Levitt v. Riddell Sport, Inc. (In re MacGregor Sporting Goods, Inc.), 199 B.R. 502, 514-15 (Bankr. D.N.J. 1995).

Without deciding whether FRCP 9(b), rather than FRCP 8(a), applies to the Committee's constructive fraud claims under state law and the Bankruptcy Code,[13] the Court concludes that the complaint sufficiently pleads insolvency to survive Foss's motion to dismiss and to allow discovery to proceed on these counts.  "To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove them."  Koppel v. 4987 Corp., 167 F.3d 125, 133 (2d Cir. 1999) (cited in Enron, 2006 WL 2400369, at *4).  Foss has been given sufficient notice regarding the

---

[13]  In Enron Corp. v. Granite Constr. Co. (In re Enron Corp.), Bk. No. 01-16034 (AJG), Adv. No. 03-93172, 2006 WL 2400369, at *5 (Bankr. S.D.N.Y. May 11, 2006), the court explained that while there is authority that claims under 11 U.S.C. § 548(a)(1)(B) need to be plead with particularity under FRCP 9(b), the "better and majority rule" is that a claim for constructive fraud under that section need not be plead with particularity as such a claim is not premised on fraud but on a transfer made for inadequate consideration at the time the transferor was insolvent.

Committee's claim of insolvency in Counts X through XIII.  See Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.), 322 B.R. 440, 451 (Bankr. N.D. Okla. 2003) (concluding that general allegations of insolvency adequately gave fair notice to a defendant of the existence of that element of a fraudulent transfer claim).  The Court finds that the complaint alleges sufficient facts to support a plausible finding of insolvency.  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1967 (2007).

### 2.    Failure to Allege Transfer of Property to the Defendant

Foss seeks dismissal of Counts X through XIII to the extent they are based upon allegedly improper transfers to entities other than himself.  As grounds for such request, Foss incorporated the memorandum submitted by Patricia Foss, Jenifer Foss Smyth, and John Smyth (the "Foss Family"), which was filed in support of their separate motion to dismiss.  The Foss Family argues that the Committee's allegations in the complaint–that the Debtor made transfers or conveyances of property "directly or indirectly" to Patricia Foss, Jenifer Foss Smyth, and John Smyth (and, by incorporation, to Foss) when the Debtor made payments to specific entities in which some of these defendants may have had an interest, and made payments to other third-party vendors or service providers by reason of which these defendants allegedly benefitted–are inadequate and fail as a matter of law.

The Foss Family contends the fraudulent transfer claims fail on their face because the complaint does not demonstrate that they were transferees of "an interest of the debtor in property" as is required under 11 U.S.C. §§ 544(b) and 548.  They argue the complaint lacks an allegation that any member of the Foss Family exercised legal dominion or control at any time over any of the Debtor's funds.  See Richardson v. United States (In re Anton Noll, Inc.), 277 B.R. 875, 879 (B.A.P. 1st Cir. 2002) (explaining that it is well settled that transferee status under

11 U.S.C. § 550(a) necessitates the transferee's "dominion and control," and that "dominion and control" refers to legal as opposed to mere physical possession of the property transferred); In re BeaconVision, Inc., 340 B.R. 674, 678 (Bankr. D.N.H. 2006) (explaining that a transferee is one who has "dominion over the money or other asset, the right to put the money to one's own purposes."). Rather, they argue all of the allegations against the Foss Family, other than a single allegation against Jennifer Foss Smyth relating to illegal dividends, demonstrate that the Debtor's actual funds were transferred to other individuals or wholly separate and distinct entities, in some cases to entities the Committee alleges Foss, Patricia Foss and/or Jenifer Foss Smyth have or may have had an interest in, and, in other cases, to suppliers and service providers whose goods or efforts allegedly provided some benefit to the Foss Family. According to the Foss Family, FMC's payments of charter fees, landing fees, fuel charges, and hangar space, for example, clearly do not represent transfers of an interest in the Debtor's property to them.

The Committee argues, first, that this is a technical argument that relates only to a small subset of the challenged transfers and does not apply to transfers alleged to have been made directly to the defendants, e.g., more than $900,000.00 in extraordinary payments to Foss denominated as payroll payments, reimbursements paid to Foss for putative business expenses, payment on notes of over $1.7 million to Foss and Foss Family LLC II, and dividends of nearly $900,000.00 paid to Foss, Dennis Foss, the Foss Family 2004 Irrevocable Trust, and Jenifer Foss Smyth. The Committee argues, second, that FMC's purchase of goods or services that were subsequently given to Foss and the Foss Family constitutes "transfers of property" of FMC because Foss and the Foss Family received items, e.g., air transportation, country club services, and bricks and mortar for their homes, for which Foss and the Foss Family never made any payment or otherwise provided any valuable consideration to FMC in return. The Committee

argues that the Court could properly "collapse" the purchase of bricks and mortar and other goods and services, and the subsequent gifting of the same to the Foss Family, as a single economic transaction that entailed the transfer of property to the Foss Family, insofar as in reality the Debtor paid the Foss Family's invoices for goods and services supplied to them personally.  See Wieboldt Stores, Inc. v. Schottenstein, 94 B.R. 488, 502 (N.D. Ill. 1988).

In seeking to avoid transfers under both the UFTA and 11 U.S.C. § 548, the Committee must allege that FMC made transfers of its property to someone.  However, contrary to the Foss Family's contention, FMC's complaint need not allege that Foss or the Foss Family were the transferees of such transfers nor must the complaint contain claims against the parties to whom such transfers were made, e.g., vendors, service providers, and companies in which theses defendants may have held an interest.  Rather, the Court finds it sufficient if the complaint asserts that there are avoidable transfers under state or federal law and the Committee seeks to recover the property transferred, or its value, from Foss and the Foss Family pursuant to 11 U.S.C. § 550(a).  See IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.), 408 F.3d 689, 706-08 (11th Cir. 2005) (holding that 11 U.S.C. § 550(a) does not mandate a plaintiff to first pursue recovery against an initial transferee but, rather, if the plaintiff proves that an avoidable transfer exists he can skip over the initial transferee and recover from those next in line); Shapiro v. Art Leather, Inc. (In re Connolly North Am., LLC), 340 B.R. 829, 838 (Bankr. E.D. Mich. 2006) (stating in the context of a preference action that "there is no apparent reason why the Trustee must sue both the initial transferee and the transfer beneficiary" and "[t]he absence of the initial transferee as a defendant in the action, without more, does not preclude the avoidance of the transfers at issue under § 547(b)"); Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Defense Network), 332 B.R. 896, 915-16 (Bankr. D. Nev. 2005) (concluding that once a trustee

proves that a transfer is avoidable he may seek to recover against any transferee, initial or immediate, or an entity for whose benefit the transfer was made); Crafts Plus+, Inc. v. Foothill Cap. Corp. (In re Crafts Plus+, Inc.), 220 B.R. 331, 338 (Bankr. W.D. Tex. 1998) (concluding that once it has been established that a qualified transfer has been made, 11 U.S.C. § 550 provides for the recovery against the initial transferee or the entity for whose benefit such transfer was made and there is no need to bring an independent action against or to name both the transferees and entities as a party to the litigation); but cf. Weinman v. Simons (In re Slack-Horner Foundries Co.), 971 F.2d 577, 580 (10th Cir. 1992) (concluding that the trustee needed to bring suit against the initial transferee before the trustee could see to recover from a subsequent transferee); Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.), 343 B.R. 75, 80-82 (Bankr. S.D.N.Y. 2006) (dismissing claims against mediate transferees because the complaint did not first seek to avoid the transfers as to the initial transferees); Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.), 230 B.R. 101, 105 (Bankr. N.D. Ohio 1998) (granting a motion to dismiss where the trustee failed to either avoid the initial transfer by the debtor or name the initial transferee as a defendant concluding that a trustee must actually avoid an initial transfer as a prerequisite to obtaining recovery from a subsequent transferee); Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Int'l, Inc.), 195 B.R. 971, 981-82 (Bankr. D. Mass. 1996) ("An avoided 'transfer' is recoverable only from a 'transferee.'  If the initial transferee makes a second transfer, the property may be recovered from the later transferee only if the 'transfer is avoided' with respect to the 'initial transferee.'") (footnotes omitted).

Accordingly, the Court will not dismiss Counts X through XIII on that basis.[14]

Additionally, for the reasons explained in the cases cited above, the Court need not engage in an analysis of whether the transactions outlined in the complaint should be viewed as "collapsed transactions," "indirect transfers," or a transfer in which the vendor or supplier were "mere conduits."  See, e.g., Wieboldt, 94 B.R. at 502 (collapsing leveraged buy out transfers into one transaction stating "a court should focus not on the formal structure of the transaction but rather on the knowledge or intent of the parties involved in the transaction"); In re Best Prods. Co., 157 B.R. 222, 229 (Bankr. S.D.N.Y. 1993) ("The ability of a court to collapse a series of steps into one transaction depends upon the facts and circumstances of each case.  In reality, collapsing transactions is little more than effort on the part of the court to focus not on the formal structure of a transaction, but rather on the knowledge or intent of the parties involved in the transaction.").  Rather, as long as the Committee has alleged that there are avoidable transfers under 11 U.S.C. §§ 544(b) and 548 as to third-parties, which it has done, Foss's and the Foss Family's motions to dismiss for failing to allege improper transfers directly to them shall be denied.

**L.    Counts XV to XVII - Avoidance of Fraudulent Transfers and Conveyances as to Defendant Patricia Foss**

The Committee seeks to avoid and to recover various transfers as being fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Count XV), 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(I) (Count XVI), and 11 U.S.C. §§ 548 and 550 (Count XVII).  Patricia Foss seeks to dismiss the fraudulent transfer claims in Counts XV through XVII on three

---

[14]  The Court will address in section III.L.3 below whether the Committee has made sufficient allegations regarding recovery under 11 U.S.C. § 550(a) with respect to the Foss Family in order to avoid dismissal of the counts against them.  Foss has not sought to dismiss on those other grounds.  If he had, the analysis set forth in that section would apply to the counts against him.

grounds:  (1) the Committee's allegations do not demonstrate that Patricia Foss was a transferee of an interest in property but rather indicate that she may have had an interest in an entity to which funds were transferred by FMC, (2) the Committee fails to allege under NH RSA 545-A:4(I)(b) and 5(I) that the alleged transfers were fraudulent as to a particular creditor, and (3) the Committee has not alleged that Patricia Foss was a transferee or entity for whose benefit such transfers were made for purposes of recovery under 11 U.S.C. § 550.  Patricia Foss's motion to dismiss Counts XV through XVII shall be granted in part and denied in part.

### 1.  Failure to Allege Transfer of Property to the Defendant

Patricia Foss argues that the Committee's complaint fails to state fraudulent transfer claims against her under either state law or bankruptcy law to the extent it details transfers of FMC's interest in property to third-party entities.  For the reasons set forth above in section III.K.2, the Court concludes that the Committee's allegations are sufficient to set forth a plausible claim against Patricia Foss within the meaning of 11 U.S.C. § 550(a), subject to the discussion set forth below in section III.L.3.

### 2.  Failure to Identify Specific Creditor

Patricia Foss contends that the Committee is required to identify a specific creditor with respect to the claims it brought under NH RSA 545-A:4(I)(b) and NH RSA 545-A:5(I) pursuant to 11 U.S.C. § 544(b), i.e., those claims asserted in Counts XV and XVI of the complaint. Having failed to identify a single creditor against whom any transfer was fraudulent, Patricia Foss argues that the Committee has not stated a viable claim.  The Committee argues that neither state law nor the Bankruptcy Code requires the identification of the precise name of a creditor against whom the transfers were fraudulent.

The Court agrees with the Committee that a <u>specific</u> creditor need not be identified in the complaint.  However, the statute is clear that the Committee must show that the transfer is voidable under state law by at least one unsecured creditor of the bankruptcy estate who holds an allowable claim.  11 U.S.C. § 544(b) (providing for the avoidance of "any transfer of an interest of the debtor property . . . that is voidable under applicable law by <u>a creditor holding an unsecured claim</u>") (emphasis added); <u>see</u> <u>Ford v. Blaine (In re Mann)</u>, 2006 BNH 032, at 6 (<u>quoting</u> <u>Williams v. Marlar (In re Marlar)</u>, 267 F.3d 749, 753 (8th Cir. 2001)).  In addition, NH RSA 545-A:4(I)(b) describes transfers that are fraudulent "as to a creditor" whose claim arose before or after the transfer and NH RSA 545-A:5(I) describes transfers that are fraudulent "as to a creditor" whose claim arose before the transfer was made.  In the Court's view, the Committee can meet the pleading requirements of the federal rules by simply alleging that such a creditor exists; a complainant need not identify a specific creditor in order to survive a motion to dismiss claims brought under 11 U.S.C. § 544(b) and NH RSA 545-A:4 or 5.  <u>See</u> <u>Giulioano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.)</u>, 339 B.R. 570, 576 (Bankr. D. Del. 2006) ("The Trustee need not identify the name of a specific creditor on which the Trustee relies. The Trustee must eventually prove the existence of a specific creditor whose claim existed at the time of the alleged overpayments on the petition date, but is not required to do so at this stage of the process."); <u>Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)</u>, 195 B.R. 971, 980 (Bankr. D. Mass. 1996) (stating, in the context of ruling on a motion to dismiss fraudulent transfer claims under the Massachusetts fraudulent conveyances act, the "[t]rustee need not name the creditor" because it was enough to allege under the liberal rule of notice pleading that "at least one qualified, unsecured creditor holding an allowable unsecured claim . . . existed at the time of the [transfer]").

In Count XVI, at ¶ 218 of the complaint, the Committee alleges "[o]ne or more claims of the creditors of the Debtor arose before each such transfer and conveyance was made."  The Committee failed to make a similar allegation in Count XV.  Because the Committee's complaint lacks an allegation regarding a required element under 11 U.S.C. § 544(b) and NH RSA 545-A:4(I)(b), i.e., that there exists an actual unsecured creditor holding an allowable unsecured claim, who could avoid the alleged fraudulent transfers, the Court concludes that the complaint fails to contain sufficient allegations to survive a motion to dismiss with respect to Count XV.  See Mann, 2006 BNH 032, at 6 (finding in favor of defendants on a fraudulent transfer claim under NH RSA 545-A:5 as the chapter 7 trustee failed to demonstrate the necessary predicate under 11 U.S.C. § 544(b)(1) that a creditor existed at the time of the conveyance who held an allowed unsecured claim on the bankruptcy petition date).  For that reason Count XV must be dismissed.  Count XVI survives the motion to dismiss on this ground.

### 3. Failure to Allege Patricia Foss was Either a Transferee or Entity for Whose Benefit the Transfers were Made for Purposes of Recovery under 11 U.S.C. § 550

In addition to the "transfer" argument made by the Foss Family addressed in section III.K.2 above, Patricia Foss also contends that the complaint fails to allege that she was either an initial transferee or a subsequent transferee of an interest in FMC's property, within the meaning of 11 U.S.C. § 550(a)(1) and (2), or that she was "the entity for whose benefit such transfer was made," within the meaning of 11 U.S.C. § 550(a)(1).  Rather, the complaint alleges that transfers were made to other entities[15] and, even if Patricia Foss and Jenifer Foss Smyth had an interest in

---

[15] Patricia Foss concedes that the complaint makes out a well-pleaded claim based upon the direct transfer of funds by FMC to entities owned by individual defendants, such as Foss Family LLC I and Foss Family LLC II, which are limited liability companies owned by Foss, Patricia Foss, and Jenifer Foss Smyth, but she argues the complaint does not make out a well-pleaded claim to the extent the Committee seeks to recover directly against the owners of the entities.

such entities (e.g., Foss Family LLC I and Foss Family LLC II), that interest cannot be a basis for finding them liable as transferees of an avoided transfer.  See NH RSA 304-C:25 (indicating no member or manager of a limited liability company shall be obligated personally for any debt of the company); Turner v. Phoenix Fin. LLC (In re Imageset, Inc.), 299 B.R. 709, 718 (Bankr. D. Me. 2003) (stating that individuals' rights as interested holders in an LLC is not alone sufficient to qualify them as persons for whose benefit the transfers were made within the meaning of 11 U.S.C. § 550(a)(1)).

The Committee contends that the Foss Family is misguided in their analysis.  The Committee states that it is not seeking to hold individual defendants, like Patricia Foss, liable on a strict liability or veil-piercing theory, but rather it seeks to hold them liable pursuant to 11 U.S.C. § 550(a)(1) because the avoidable transfers made to the LLCs are alleged to have been made with the intent of benefitting the members of the LLC, an allegation that must be accepted as true for purposes of a motion to dismiss.  As an example, the Committee cites to its allegations in ¶ 23 of the complaint wherein the Committee alleges that FMC made payments totaling $156,950.00 to Foss Family LLC II, a company owned by Foss, Patricia Foss, and Jenifer Foss Smyth.  The LLC then purportedly used those funds to pay the mortgage on real estate owned by the LLC.  According to the Committee, those payments by FMC were directed by Foss to the LLC for a non-corporate purpose and dollar-for-dollar those payments benefitted the LLC's owners, including Patricia Foss and Jenifer Foss Smyth, whose equity interests in the LLC were enhanced by the cash payments made toward the LLC's mortgage.  In response, the Foss Family argues that the complaint fails to allege that the Foss Family were the intended beneficiaries of such transfers by FMC or that they derived a benefit directly from the initial transfers.

69

Upon review, the Court finds that a fair reading of the complaint demonstrates the Committee has set forth the necessary elements to recover under 11 U.S.C. § 550(a) for some of the allegedly avoidable transfers under 11 U.S.C. §§ 544(b) and 548 but not for others.  To establish a right to recovery under 11 U.S.C. § 550(a), the Committee needs to have alleged in the complaint, and will ultimately need to establish with evidence at trial, that Patricia Foss was either:

    1.      an initial transferee of an avoidable transfer;

    2.      an entity for whose benefit an avoidable transfer was made; or

    3.      a subsequent transferee of an initial transferee of an avoidable transfer.

11 U.S.C. § 550(a)(1) and (2); <u>see</u> <u>Bonded Fin. Servs., Inc. v. European Am. Bank</u>, 838 F.2d 890, 896 (7th Cir. 1988); <u>Richardson v. United States (In re Anton Noll, Inc.)</u>, 277 B.R. 875, 878 (B.A.P. 1st Cir. 2002).  Thus, it is enough to allege that the Patricia Foss and other Foss Family members fall within one of these three categories.

The complaint alleges at ¶¶ 211, 217, and 224 in Counts XV, XVI, and XVII, respectively, that FMC made transfers or conveyances "directly or indirectly" to Patricia Foss and payments to or on behalf of Foss Family LLC I, Foss Family LLC II, and Custom Travel of New Hampshire, Inc. for improvements to Patricia Foss's personal residence, travel on the company jet (and associated hangar fees and jet fuel cots), personal club memberships and house account charges at numerous country clubs in Bermuda, Florida, New York, and New Hampshire.  More specific allegations are set forth in other portions of the complaint and described below.

**a.**     **Payments re:  Patricia Foss**

The Committee asserts in ¶ 99 that payments totaling $12,874.03 were made by FMC to various vendors on account of improvements made to Foss's and Patricia Foss's Rye, New Hampshire residence.  While the complaint does not explicitly indicate that Patricia Foss was an entity for whose benefit these purportedly avoidable transfers were made, the Court can plausibly infer that improvements made to an asset, in this case a home, benefit the owner of the asset, in this case, Patricia Foss.  For that reason, the Committee has stated a claim against Patricia Foss for which relief may be granted.  Similarly, ¶¶ 112 through 115 of the complaint outline payments totaling over $1.5 million to various entities, including payments totaling $1,452,541.31 that were made by FMC to Business Helicopters, Inc., an entity owned by Foss, for charges related to personal travel on a private jet by Foss, Patricia Foss, Jenifer Foss Smyth, and/or John Smyth for trips between New Hampshire and Naples, Florida, where Foss and Patricia Foss maintained personal residences.  Again, while the complaint does not explicitly indicate that Patricia Foss was an entity for whose benefit these purportedly avoidable transfers were made, the allegations are sufficient for the Court to plausibly infer that payments were made so that Patricia Foss could enjoy personal travel between her personal residences resulting in a benefit to Patricia Foss.

**b.**     **Payments re:  Foss Family LLC I**

The complaint alleges in ¶ 26 that Foss, Patricia Foss, and Jenifer Foss Smyth are the members of Foss Family LLC I.  The Committee further alleges in ¶ 124(a) of the complaint that FMC paid bills, including tax liabilities and costs associated with real property FMC did not own, in the amount of $23,099.77 "all for the benefit of Defendant Foss Family LLC I."  The Committee states further in ¶ 93 that "over the course of many years, there were a vast number of

71

improper transfers of the Debtor's funds, as detailed below, which benefitted Company insiders as well as entities in which they had a pecuniary interest."  However, the complaint makes no specific allegation as to how the payments made to or on account of Foss Family LLC I benefitted Patricia Foss, as owner of Foss Family LLC I.  An owner of an interest in a limited liability company is not personally obligated for the debts of the company simply because of the ownership interest.  NH RSA 304-C:25.  While it is possible that a transfer of property to an LLC may benefit an owner, the complaint must make allegations sufficient to support a plausible inference that Patricia Foss, as an owner, was benefitted.  The Court finds that the complaint does not contain such allegations.  Accordingly, the complaint fails to state a claim for recovery against Patricia Foss under 11 U.S.C. § 550(a) for transfers to or on account of Foss Family LLC I, and Counts XV to XVII shall be dismissed with respect to all transfers to that entity.

### c.        Payments re:  Foss Family LLC II

The complaint alleges in ¶ 27 that Foss, Patricia Foss, and Jenifer Foss Smyth are the members of Foss Family LLC II.  Further, in ¶ 62, the Committee asserts that Foss Family LLC II, was an entity "created for the benefit of Foss family members" and in ¶ 93, it states that "over the course of many years, there were a vast number of improper transfers of the Debtor's funds, as detailed below, which benefitted Company insiders as well as entities in which they had a pecuniary interest."  The complaint in ¶ 116(b) lists payments totaling $660,000.00 made by FMC to Foss Family LLC II for the repayment of insider loans.  The complaint, however, fails to allege that Patricia Foss was an entity for whose benefit such transfers were made within the meaning of 11 U.S.C. § 550(a)(1).  For that reason, the complaint fails to state a claim for recovery of $660,000.00 from Patricia Foss.

Paragraph 120 of the complaint states that "the Debtor engaged in a number of real property transactions that resulted in properties and funds being transferred from the Debtor to entities in which various Foss family members had a pecuniary interest without valuable consideration, all to the detriment of the Debtor and its creditors."  In ¶ 121, the Committee specifically alleges that FMC transferred a personal residence to Foss Family LLC II in 1997 and then thereafter it funded the mortgage payments on the property, which the Committee believes was occupied by the Foss family's housekeeper.  In addition, as alleged in ¶ 122, FMC conveyed two other parcels of real estate to Foss Family LLC II without receiving valuable consideration in exchange for the transfers.  As outlined in ¶ 123, during the period from October 15, 2001, to September 2, 2005, FMC forwarded at least $156,950.00 to Foss Family LLC II's bank account from which the mortgage payments for these three properties were withdrawn.

The Committee further alleges in ¶ 124 of the complaint that FMC paid bills, including tax liabilities and costs associated with real property FMC did not own, in the amount of $14,814.42 "all for the benefit of Defendant Foss Family LLC II."  In addition, the Committee alleges FMC made payments totaling at least $21,879.63 for maintaining and improving real estate owned by Foss Family LLC II, "on behalf of, and for the benefit of, Defendant Foss Family LLC II."  As argued by the Committee in their response to the motion to dismiss, and as described above, such payments could plausibly have benefitted dollar-for-dollar the LLC's owners, including Patricia Foss and Jenifer Foss Smyth, whose equity interests in the LLC were enhanced by the cash payments made toward the LLC's mortgages.  Because the Committee has made an additional allegation of benefit in ¶ 62 with respect to Foss Family LLC II, that it did not make with respect to Foss Family LLC I, and because the Court believes that a plausible

inference can be made that Patricia Foss received a benefit by the payment of the company's mortgages and improvements, the Committee has stated a claim for recovery.

### d.    Payments re:  Custom Travel of New Hampshire, Inc.

The complaint alleges in ¶ 29 that Foss and/or Patricia Foss hold an ownership interest in Custom Travel of New Hampshire, Inc.  In ¶ 119 of the complaint the Committee alleges that the Debtor paid no less than $64,700.00 in fees to Custom Travel of New Hampshire, Inc., a company owned by Foss and/or Patricia Foss, between November 2001 and June 2005.  The complaint fails to allege that Patricia Foss was a person for whose benefit these purportedly avoidable transfers were made.  For that reason, the Committee has not stated a claim for recovery of fees paid to Custom Travel of New Hampshire, Inc. from Patricia Foss.  Patricia Foss's motion to dismiss on that basis shall be granted.

### 4.    Patricia Foss's Motion to Dismiss Counts XV, XVI, and XVII

For the reasons set forth above, the Court concludes that the complaint adequately alleges that Patricia Foss has received the benefit of allegedly fraudulent transfers to or on behalf of herself, with respect to improvements to her home and personal travel, and to and on behalf of Foss Family LLC II, except with respect to repayment of insider loans, but the complaint does not adequately allege benefit to Patricia Foss with respect to transfers to or on behalf of Foss Family LLC I or Custom Travel of New Hampshire, Inc.  Accordingly, the Court shall grant Patricia Foss's motion to dismiss Count XV in its entirety and Counts XVI and XVII to the extent stated in this subsection.

**M.      Counts XVIII and XIX - Avoidance of Fraudulent Transfers and Conveyances as to Defendants Jenifer Foss Smyth and John Smyth and Count XX - Avoidance of Voluntary and Involuntary Transfers as to Defendant Jenifer Foss Smyth**

The Committee seeks to avoid and to recover various transfers as being fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Count XVIII) and 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(I) (Count XIX) as to Jenifer Foss Smyth and John Smyth. The Committee also seeks to avoid and to recover various transfers as being fraudulent under 11 U.S.C. §§ 548 and 550 (Count XX) as to Jennifer Foss Smyth alone. Jenifer Foss Smyth and John Smyth seek to dismiss the fraudulent transfer claims in Counts XVIII and XIX on three grounds:  (1) the Committee's allegations do not demonstrate that Jenifer Foss Smyth and John Smyth were transferees of an interest in property but rather indicate that they may have had an interest in an entity to which funds were transferred by FMC, (2) the Committee fails to allege under NH RSA 545-A:4(I)(b) and 5(I) that the alleged transfers were fraudulent as to a particular creditor, and (3) the Committee has not alleged that Jenifer Foss Smyth and John Smyth were transferees or entities for whose benefit such transfers were made for purposes of recovery under 11 U.S.C. § 550. Jenifer Foss Smyth seeks to dismiss the fraudulent transfer claims in Counts XX on the first and third grounds listed above.

**1.      Failure to Allege Transfer of Property to the Defendants**

For the reasons set forth in section III.K.2 above, the motion of Jenifer Foss Smyth and John Smyth to dismiss Counts XVIII and XIX based upon the Committee's failure to allege that they received transfers of property from FMC shall be denied.

**2.      Failure to Identify Specific Creditor**

Like Patricia Foss, Jenifer Foss Smyth and John Smyth contend that the Committee's failure to identify a specific creditor with respect to its claims under 11 U.S.C. §§ 544(b) and NH

75

RSA 545-A:4(I)(b) and NH RSA 545-A:5(I) requires dismissal of Counts XVIII and XIX.  For the reasons explained in section III.L.2 above, the Committee was not required to identify a specific creditor in its complaint but rather was required to allege that there existed at least one unsecured creditor of the bankruptcy estate who holds an allowable claim.

Upon review of the complaint, the Court finds that the Committee has alleged in Count XIX at ¶ 236 that "[o]ne or more claims of the creditors of the Debtor arose before each such transfer and conveyance was made" but has failed to make a similar allegation in Count XVIII. Accordingly, for the reasons set forth in section III.L.2 above, Count XVIII shall be dismissed. Count XIX survives the Foss Family's motion to dismiss on the basis that the Committee failed to identify a creditor.

### 3. Failure to Allege Jenifer Foss Smyth and John Smyth were Either Transferees or Entities for Whose Benefit the Transfers were Made for Purposes of Recovery under 11 U.S.C. § 550

While Jenifer Foss Smyth acknowledges that the Committee made an allegation that she received funds directly from FMC in the form of dividends, she and her husband, John Smyth, deny that the complaint makes any other allegation that they were either initial or subsequent transferees of an interest in FMC's property or an entity for whose benefit such transfers were made.  As previously discussed in section III.L.3 above, the complaint must allege that Jenifer Foss Smyth and John Smyth were either:

1.      an initial transferee of an avoidable transfer;

2.      an entity for whose benefit an avoidable transfer was made; or

3.      a subsequent transferee of an initial transferee of an avoidable transfer.

11 U.S.C. § 550(a)(1) and (2).

### a.        Payments re:  Jenifer Foss Smyth and John Smyth

The complaint asserts in ¶ 99 that payments totaling $223,095.13 were made by FMC to various vendors on account of improvements made to the Smyths' Hamilton, Massachusetts residence.  Paragraph 103 lists payments totaling $4,957.100 that were made by FMC to McLaughlin Transportation Systems for fees related to the storage of personal items of the Smyths during the renovation of their home.  While the complaint does not explicitly indicate that the Smyths were entities for whose benefit these purportedly avoidable transfers were made, the Court can plausibly infer that improvements made to a home benefit the home's owners, as do payments to store the homeowners' goods.  Accordingly, the Committee has stated a claim against both Jenifer Foss Smyth and John Smyth for which relief may be granted.

Similarly, ¶¶ 112 through 115 of the complaint outline payments totaling over $1.5 million to various entities, including payments totaling $1,452,541.31 that were made by FMC to Business Helicopters, Inc., an entity owned by Foss, for charges related to personal travel on a private jet by Foss, Patricia Foss, Jenifer Foss Smyth, and/or John Smyth for trips between New Hampshire and Naples, Florida.  Again, while the complaint does not explicitly indicate that Jenifer Foss Smyth and John Smyth were entities for whose benefit these purportedly avoidable transfers were made, the Court can plausibly infer that payments were made so that Jenifer Foss Smyth and John Smyth could benefit from personal travel between their families' homes. Therefore, the Committee has stated a plausible claim for recovery with respect to these transfers.

### b.        Payments re:  Foss Family LLC I

For the reasons outlined in section III.L.3.b above, the Committee has not stated a claim against Jenifer Foss Smyth with respect to payments to or on behalf of Foss Family LLC I.  The

complaint contains no allegations that John Smyth had an interest in or any involvement with Foss Family LLC I, and, therefore, any claims for recovery against him related to allegedly fraudulent transfers with respect to payments to or on behalf of Foss Family LLC I shall be dismissed.

### c.    Payments re:  Foss Family LLC II

For the reasons outlined in section III.L.3.c above, the Committee has stated a claim against Jenifer Foss Smyth with respect to all payments to or on behalf of Foss Family LLC II, except the $660,000.00 in repayment of insider loans.  The complaint contains no allegations that John Smyth had an interest in or any involvement with Foss Family LLC II, and, therefore, any claims for recovery against him related to allegedly fraudulent transfers with respect to payments to or on behalf of Foss Family LLC II shall be dismissed.

### d.    Payments re:  Foss Family 2004 Irrevocable Trust

The complaint alleges in ¶ 28 that Jenifer Foss Smyth and her children are the beneficiaries of the Foss Family 2004 Irrevocable Trust.  Paragraph 118 of the complaint lists $37,429.24 in dividends paid to the Foss Family 2004 Irrevocable Trust between August 16, 2004, and May 17, 2005.  The complaint fails to allege that Jenifer Foss Smyth was a person for whose benefit such payments were made.  For that reason, the Committee has not set forth a claim for recovery against Jenifer Foss Smyth under 11 U.S.C. § 550(a) and her motion to dismiss on that basis shall be granted.  The complaint does not allege that John Smyth had an interest in or any involvement with the Foss Family 2004 Irrevocable Trust, and, therefore, any claims relating to this entity shall be dismissed as to him.

4.    **Jenifer Foss Smyth's and John Smyth's Motion to Dismiss Counts XVIII and XIX and Jennifer Foss Smyth's Motion to Dismiss Count XX**

Thus, reviewing the complaint in the light most favorable to the Committee, the Court concludes that the complaint fairly alleges plausible claims that (1) Jenifer Foss Smyth and John Smyth have received the benefit of allegedly fraudulent transfers to or on behalf of themselves, with respect to improvements to their home, storage of personal property, and personal travel, and (2) Jenifer Foss Smyth has received the benefit of allegedly fraudulent transfers to or on behalf of Foss Family LLC II, except with respect to repayment of the insider loans, but that (3) neither Jenifer Foss Smyth nor John Smyth has received a benefit with respect to transfers to or on behalf of Foss Family LLC I or the Foss Family 2004 Irrevocable Trust.  Accordingly, the Court shall grant Jenifer Foss Smyth's and John Smyth's motion to dismiss Count XVIII in its entirety and Counts XIX and XX to the extent outlined above.

N.    **Counts XXI to XXV - Avoidance of Fraudulent Transfers and Conveyances and Avoidance of Preferential Transfers as to Kevin Sexton**

The Committee seeks to avoid and to recover various transfers to Sexton as being fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Count XXI), 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(I) (Count XXII), 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(II) (Count XXIII), and 11 U.S.C. §§ 548 and 550 (Count XXIV), and as being preferential under 11 U.S.C. §§ 547 and 550 (Count XXV).  Sexton seeks to dismiss the claims in Counts XXI through XXV on the following grounds:  (1) the complaint seeks no recovery against Sexton in Counts XXI and as to him should be dismissed, (2) the money Sexton received was wages in exchange for which he performed services thus making the payments the "just debt' of FMC and not a transfer for less than reasonably equivalent value, (3) recovery under Count XXIII is barred by a one-year statute of limitations, (4) the payment of wages was

for a contemporaneous debt and the complaint fails to allege an antecedent debt, and (5) the payments to Sexton as an employee were made in the ordinary course of FMC's business affairs and the complaint fails to allege that the payments were outside the ordinary course.

### 1.    No Recovery Against Sexton in Count XXI

Sexton is incorrect in stating that the Committee has asserted no claim against him in Count XXI.  Count XXI seeks to avoid and to recover various transfers by FMC to Sexton as being constructively fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b). Accordingly, Sexton's motion to dismiss shall be denied with respect to Count XXI.

### 2.    Payment of "Just Debt" and Not Less than Reasonably Equivalent Value

Sexton argues that all of the payments to him described in the complaint are wages within the meaning of NH RSA 275:42(III) and NH RSA 275:43(III)[16] for which Sexton provided services to FMC, and, as an employer, it had an obligation under NH RSA 275:44(IV)[17] to pay such wages to Sexton as and when due.  Sexton contends that payments of the amounts set forth in the complaint were payments of a "just debt" and therefore were for reasonably equivalent value under NH RSA 545-A:3(I) and under 11 U.S.C. § 548(d)(2)(A), as these sections provide that value is given for a transfer if the property is transferred in satisfaction of an antecedent debt.

---

[16]  Wages mean "compensation . . . for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation" under NH RSA 275:42(III) and include "vacation pay, severance pay, personal days, holiday pay, sick pay, and payment of employee expenses, when such benefits are a matter of employment practice or policy, or both" under NH RSA 275:43(III).

[17]  NH RSA 275:44(IV) sets forth the requirement of an employer to pay an employee's wages upon termination of an employee's employment.

In response, the Committee argues that the challenged payments set forth in ¶ 97 of the complaint were "extraordinary payments over and above his salary," which is an allegation Sexton cannot controvert in his motion to dismiss.  The Committee states further that FMC's payments to Sexton were not "just debts" for wages, but rather included forgiveness of the balance of a $30,000.00 personal loan FMC made to him, a bonus of $24,000.00, "consulting fees" totaling $18,400.00, payment of his country club bills in the amount of $7,544.00, and a "service award" of $25,000.00 given to him upon his resignation.

In his reply, Sexton argues that it does not matter whether such payments were ordinary or extraordinary as all payments owing from an employer to an employer whether in the nature of wages, bonuses, severance, or otherwise are "wages" under state statute that must be paid, and, therefore, they constitute reasonably equivalent value warranting dismissal of the Committee's claim.

The Court agrees with the Committee and concludes that the complaint contains sufficient allegations in ¶¶ 87 and 97 and in Counts XXII and XXIV that, if true, would support a plausible claim for fraudulent transfers.  There is no basis to dismiss Counts XXII or XXIV on the grounds that the Committee has failed to state a claim upon which relief can be granted as the complaint plainly states in ¶¶ 255 and 269 that the transfers were for less than reasonably equivalent value.  Sexton is attempting to controvert this fact and argue a defense of reasonably equivalent value.  However, an affirmative defense requires that the facts establishing the defense are definitively ascertainable from the complaint and those facts suffice to establish the affirmative defense with certitude.  Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006) (citations and quotations omitted), cert. denied, 127 S. Ct. 2131 (2007).  At this early stage of the case, the Court cannot conclude that Sexton has a complete defense to each transfer.  The

Committee may be able to establish that these payments to Sexton were not in fact

"compensation . . . for labor or services rendered by an employee" within the meaning of NH

RSA 275:42(III).  See ACAS Acquisitions (Precitech) Inc. v. Hobert, 923 A.2d 1076, 1093-1094

(N.H. 2007) (concluding the employee's severance benefits were not wages under NH RSA 275,

and, therefore, the employer did not violate NH RSA 275 in refusing to pay them).

### 3.      Recovery under Count XXIII is Limited by Statute of Limitations

In Count XXIII, the Committee seeks to avoid and to recover transfers to Sexton under

11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(II).  Sexton argues that the Committee's

claim under this count is limited since recoveries may be had only within one year after the

transfer was made or the obligation was incurred.  The Committee does not dispute this

contention.  The Court agrees with Sexton that NH RSA 545-A:9(III) limits the Committee's

recovery to transfers that occurred between September 16, 2004, and September 15, 2005, which

would exclude recovery for transfers relating to the forgiveness of the balance of the $30,000.00

personal loan FMC made to him, the bonus of $24,000.00, and payment of Sexton's country club

bills in the amount of $7,544.00.

### 4.      Failure to Allege Antecedent Debt

The Committee seeks in Count XXIII to avoid and to recover transfers as fraudulent

under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(II) and in Count XXV to avoid and to

recover transfers as preferential under 11 U.S.C. §§ 547 and 550.  An element of each such claim

is that the transfers be made on account of antecedent debt.  Sexton argues that the complaint

contains only a conclusory allegation of antecedent debt in ¶¶ 264 and 276 of the complaint.  He

states further that ¶ 97 of the complaint indicates that such payments were made at the same time

the debts were incurred and contains no allegation that FMC's payments to Sexton were late,

past due, or for bonuses earned earlier.  Therefore, according to the Sexton, the payments were not for an antecedent debt but rather were for a contemporaneous debt.

The Committee responds by stating Sexton is essentially attempting to assert the "contemporaneous exchange for new value" defense of 11 U.S.C. § 547(c)(1)(A).  The Committee contends Sexton has failed to clear the very high hurdle to have this claim dismissed on the grounds that he has an affirmative defense clearly proven by the allegations in the complaint.  The Court agrees with the Committee and concludes that Sexton has not established this defense with certitude.  The Committee is entitled to pursue its claim in Count XXIII to the extent not limited by the Court's other rulings.

### 5.      Failure to Allege Outside of Ordinary Course

Sexton argues that the Committee's preferential transfer claim in Count XXV must be dismissed because the complaint contains no factual allegation that the payments to Sexton were outside the ordinary course of the business financial affairs of FMC and Sexton, as employer and employee.  The Committee responds by stating Sexton is essentially attempting to assert the "ordinary course of business" defense of 11 U.S.C. § 547(c)(2), and its allegations in the complaint that the payments to Sexton were "extraordinary" and "improper" are sufficient to overcome Sexton's contention that the claim in Count XXV should be dismissed based on an affirmative defense.  The Court agrees with the Committee that Sexton has failed to establish a defense with certitude as required, and, therefore, Sexton's motion to dismiss on that basis must denied.

### 6. Sexton's Motion to Dismiss Counts XXI to XXV

For the reasons set forth above, the Court shall deny Sexton's motion to dismiss Counts XXI, XXII, XXIV, and XXV, and shall deny the motion to dismiss Count XXIII, except to the extent that recovery shall be limited in this count by the one-year statute of limitations.

### O. Counts XXVI and XXVII - Avoidance of Fraudulent Transfers and Conveyances as to Defendant Douglas Kinney

The Committee seeks to avoid and to recover various transfers to Kinney as being fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Count XXVI) and 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(I) (Count XXVII). Kinney seeks to dismiss the fraudulent transfer claims in Counts XXVI and XXVII on the grounds that the Committee has failed to plead sufficient facts to establish a prima facie case and has instead only parroted elements of the statute. Like other defendants, Kinney argues that the Committee has (1) failed to adequately plead insolvency, and (2) failed to identify the existence of a specific creditor whose claim arose before the relevant transfers; further, Kinney contends that (3) the Committee has failed to adequately identify the property transferred, the date of the transfer, and the recipient of the transfer if it is anyone other than Kinney. Kinney's motion to dismiss Counts XXVI and XXVII shall be granted.

### 1. Failure to Adequately Describe Transfers

In Count XXVI at ¶ 281 and in Count XXVII at ¶ 287, the Committee alleges that "[u]pon information and belief, since September 16, 2001, the Debtor made transfers or conveyances of property directly or indirectly to Defendant Douglas Kinney." Kinney contends that the Committee has failed to adequately identify the property transferred, the date of the transfers, and the recipient of the transfers if it is anyone other than Kinney. However, Kinney acknowledges in his motion that the Committee may be referring to payment of director fees and

expenses totaling $8,575.30 paid to Kinney in 2004.  The Committee indicates in its reply memorandum that indeed it is referring to those transfers.  Such transfers are detailed in ¶ 111 of the complaint wherein the Committee alleges that Kinney was paid director fees of $7,500.00 with a check dated July 22, 2004, and director expenses of $1,075.30 with a check dated August 17, 2004.  The Court finds that Kinney has fair notice of the transfers at issue.

### 2.    Failure to Adequately Plead Insolvency and Lack of Reasonably Equivalent Value

Kinney, like Foss, contends that the Committee failed to adequately plead the insolvency requirements of NH RSA 545-A:4(I)(b) and NH RSA 545-A:5(I).  For the reasons set forth above in section III.K.1, the Court concludes that the complaint sufficiently pleads insolvency.

Kinney also suggests that the complaint fails to adequately plead that the Debtor made a transfer to Kinney without receiving reasonably equivalent value.  The Committee argues that the complaint clearly alleges that Kinney failed to perform his responsibilities as a director and therefore FMC did not receive any valuable services from Kinney in exchange for FMC's payment of director fees and expenses.  The Committee has not alleged that the director's fee paid to Kinney was excessive nor has it alleged that Kinney failed to undertake to perform his duties as a director.  Rather, the Committee's claim is based upon allegations that Kinney did not provide reasonably equivalent value due to the quality of his performance as a director.  The distinction between the quality and the quantity of services provided is critical.  Boyd v. Sachs (In re Auto Specialities Mfg. Co.), 153 B.R. 457, 498 (Bankr. W.D. Mich. 1993).  "Where . . . the compensation is commensurate with the undertaking and the [defendant] attempts in good faith to fulfill that undertaking, fair consideration has been given."  Id.  The Committee has not alleged that Kinney acted in bad faith as a director, or that he failed to undertake the duties of a director, or that the compensation paid to him for service as a director was excessive for the

undertaking. The Committee only alleges that the quality of his service as a director was not valuable. Bad business decisions without more cannot form the basis for a fraudulent conveyance action seeking recovery of compensation paid to an officer or a director. Id. at 499.

The Court finds upon review of the complaint that the Committee has not stated a fraudulent transfer claim against Kinney with respect to FMC's payment to him of director's fees and expenses. Therefore, Kinney's motion shall be granted on that basis.

### 3. Failure to Identify Specific Creditor

Like the Foss Family, Kinney also contends that the Committee's failure to identify a specific creditor with respect to its claims under 11 U.S.C. §§ 544(b) and NH RSA 545-A:4(I)(b) and NH RSA 545-A:5(I) requires dismissal of Counts XXVI and XXVII. For the reasons explained in section III.L.2 above, the Committee was not required to identify a specific creditor in its complaint but rather was required to allege that there existed at least one unsecured creditor of the bankruptcy estate who holds an allowable claim.

Upon review of the complaint, the Court finds that the Committee has alleged in Count XXVII at ¶ 288 that "[o]ne or more claims of the creditors of the Debtor arose before each such transfer and conveyance was made" but has failed to make a similar allegation in Count XXVI. Accordingly, for the reasons set forth in section III.L.2 above, Count XXVI shall be dismissed on that basis as well. Count XXVII would survive Kinney's motion to dismiss for failing to identify a specific creditor.

### P. Counts XXVIII to XXX - Avoidance of Fraudulent Transfers and Conveyances as to Defendant Dennis Foss

The Committee seeks to avoid and to recover various transfers to Dennis Foss as being fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Count XXVIII), 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(I) (Count XXIX), and 11 U.S.C. §§ 548 and

550 (Count XXX).  Dennis Foss seeks to dismiss the fraudulent transfer claims in Counts

XXVIII through XXX on three grounds:  (1) the Committee seeks to recover transfers outside

the limitation period for the redemption of common stock, (2) there was reasonably equivalent

value both for the repayment of the loan and for the preferred dividend payments, and (3) the

complaint lacks factual allegations that would support a conclusion that (a) transfers were made

at a time when the company was either engaged in a transaction for which the remaining assets

were unreasonably small or was incurring debts beyond an ability to pay, or (b) the transfers

would render the company insolvent.

### 1.    Statute of Limitations

According to Dennis Foss, the complaint seeks the avoidance of the Stock Redemption,

which took place in August 2000.  Dennis Foss contends that the Committee's fraudulent

conveyance claim fails with regard to the Stock Redemption because the transfer occurred

outside the four-year limitation period contained in NH RSA 545-A:9(II) for claims brought

under NH RSA 545-A:4(I)(b) and NH RSA 545-A:5(I).  The Committee did not address this

argument by Dennis Foss in its memorandum but indicated elsewhere that NH RSA 545-A:9(II)

limits recovery to those transfers made within the four years preceding the petition date, which in

this case would be transfers made since September 16, 2001.

Paragraph 125 of the complaint details the redemption of Dennis Foss's common stock

and indicates that an agreement was made on August 8, 2000, pursuant to which FMC was to

purchase Dennis Foss's shares of common stock for approximately $5,841,000.00, with

$1,000,000.00 to be paid on August 8, 2000, $1,000,000.00 to be paid on October 1, 2000, and

the balance of $3,481,600 to be paid over twenty-four months from February 15, 2001, to

January 14, 2003.  FMC made a $1,000,000.00 payment on August 8, 2000.  FMC did not make

the October 1, 2000, payment, but rather paid $500,000.00 on April 25, 2001, and executed the 2001 Note, which amended the original promissory note by increasing the principal amount to $3,981,600.00.  According to the complaint, FMC made two $100,000.00 payments on the 2001 Note, for accrued interest, on May 21, 2002, and August 7, 2002.

While not clear from the complaint, it appears that the Committee seeks to avoid only these last two payments totaling $200,000.00, as these are the only transfers in connection with the Stock Redemption that fall within the four-year look-back period under the statute.  The Court agrees with Dennis Foss that recovery of the prior payments totaling $1,500,000.00 are barred by the statute of limitations.  To the extent the Committee bases its fraudulent conveyance claims in Counts XXVIII and XIX on the $1,500,000.00 in payments FMC made to Dennis Foss, such claims are barred and Dennis Foss's motion to dismiss on that basis shall be granted.  To the extent the Committee bases its claims on the $200,000.00 in payments made in 2002, such claims are not barred and Dennis Foss's motion to dismiss on that basis shall be denied.

### 2.    Existence of Reasonably Equivalent Value

Dennis Foss contends that the Committee's allegations in Counts XXVIII and XXIX fail to state a claim with respect to FMC's repayment of loans made by Dennis Foss to FMC.  According to Dennis Foss, the complaint does not establish that FMC did not receive reasonably equivalent value in exchange for the transfers, a requirement of NH RSA 545-A:4(I)(b) and 545-A:5(I).  He directs the Court's attention to NH RSA 545-A:3(I), which provides in relevant part that "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied."  Dennis Foss argues that the $200,000.00 in payments made to him pursuant to the 2001 Note, as described in ¶ 126 of the

complaint, and the $200,000.00 in payments made to him pursuant to the 2004 Note, as described in ¶¶ 50 and 128 of the complaint, were made to satisfy antecedent debts.

The Committee did not address directly this argument of Dennis Foss.  The Court finds it well founded.  In general, NH RSA 545-A:4 and 5 provide for the avoidance of transfers as fraudulent only if a debtor does not receive reasonably equivalent value.  Because the complaint alleges that the payments on the 2001 Note and the 2004 Note were in satisfaction of the debt represented by those notes (¶¶ 125-128), the transfers made pursuant to those notes were by definition made for reasonably equivalent value, if the notes are debt instruments.  For the reasons discussed in section III.I above, the Court shall deny Dennis Foss's motion to dismiss Count IX which seeks to recharacterize the 2001 Note and the 2004 Note as equity.  If the Committee is successful in its recharacterization claims for one or both of the notes, then Dennis Foss's argument on the existence of reasonably equivalent value would likely fail.  If either of the notes is recharacterized as equity, then any payments made to Dennis Foss on account of those instruments would be distributions to a shareholder in redemption of an equity interest.  Redemption of an equity interest by an insolvent corporation provides no value to the corporation.  Liston v. Gottsegen (In re Mi-Lor Corp.), 348 F.3d 294, 307 (1st Cir.  2003) (citing Consove v. Cohen (In re Roco Corp.), 701 F.2d 978, 982 (1st Cir. 1983)).  For the reasons discussed in section III.P.3 below, the complaint contains allegations which support a plausible inference that FMC was insolvent when the payments in question were made.  Accordingly, the motion to dismiss Counts XXVIII and XXIX shall be denied at this time.  Dennis Foss may re-file his motion on these counts if and when Count IX is dismissed or resolved in his favor.

Dennis Foss also argues that reasonably equivalent value was provided for the preferred dividend payments made to him.  Paragraph 118 of the complaint alleges that Dennis Foss

received $528,600.00 in illegal dividends paid to him as a preferred stockholder during the period November 2001, through May 2005.  In his motion to dismiss, Dennis Foss explains, without citing to any allegations in the complaint, that the dividend payments were made pursuant to the terms of the Stock Redemption, which were incorporated into the August 2000 note and the 2001 Note.  Dennis Foss contends that the preferred dividend payments were a contractual obligation of FMC and therefore an antecedent debt of the corporation for purposes of the state and federal fraudulent conveyance statutes.  The Committee counters by stating that no consideration flowed to FMC on account of these obligations and therefore payments on these obligations are recoverable as fraudulent transfers to the extent FMC was insolvent when they were made.  In a reply, Dennis Foss suggests that any recovery for the preferred dividend payments must be done in accordance with the NH BC Act, NH RSA 293-A, which contains a specific provision at NH RSA 293-A:8.33 setting forth liability for unlawful distributions, e.g., distributions made in violation of NH RSA 293-A:6.40 or the articles of incorporation.  NH RSA 293-A:8.33 imposes liability on directors who authorize such payments.  Shareholders who accept such distributions are liable for contribution to directors in the amount of any distribution they accepted knowing it was made in violation of NH RSA 293-A:6.40.  Dennis Foss argues that this purportedly more specific statute controls over the more general fraudulent conveyance statutes.

The Court disagrees.  NH RSA 293-A:8.33 creates liability on directors for approving or assenting to the payment of illegal dividends and grants to such directors certain contribution rights.  This provision of the NH BC Act does not preempt any other remedy that a corporation may have against a person other than a director.  However, in this case, FMC made the payment of preferred stock dividends to Dennis Foss pursuant to the terms of the issued and outstanding

shares of preferred stock.  As discussed in section III.I.3 above, the complaint does not allege that the issuance of the stock was fraudulent and does not allege that the payments were in violation of the NH BC Act, NH RSA 293-A:6.40.  Accordingly, it appears that the dividends were payment on account of FMC's antecedent obligation under its preferred stock issue and, therefore, constitute value under NH RSA 545-A:3(I).

### 3.      Failure to Plead Insolvency and Inadequate Capitalization

Dennis Foss asserts that the complaint lacks factual allegations that would support a conclusion that the specific transfers to him were made at a time when the company was either engaged in a transaction for which the remaining assets were unreasonably small or was incurring debts beyond an ability to pay or would render the company insolvent as a result of the transfers.  Dennis Foss argues that bald and wholly conclusory statements are insufficient to withstand a motion to dismiss; rather, the Committee should have provided detailed information regarding FMC's finances during time periods relevant to its fraudulent transfer claims.  Dennis Foss contends that the Committee should have used data from the audits referenced in ¶ 81 of the complaint to demonstrate FMC's insolvency at particular points in time.  Instead, FMC merely provides information regarding covenant defaults with its lenders, which alone do not demonstrate that FMC was unable to pay its debts as they became due or that its liabilities exceeded its assets.  Other than an allegation regarding its failure to pay certain insurance premiums, the Committee failed to allege that FMC did not pay or was unable to pay its trade or unsecured general creditors.  Dennis Foss argues that the complaint therefore fails to state claims for fraudulent transfers under both state and federal bankruptcy law.

For the reasons discussed above in section III.K.1, the Court concludes that the complaint makes sufficient allegations regarding insolvency, undercapitalization, and FMC's inability to pay its debts to meet the pleading requirements of the federal rules.

### 4.  Dennis Foss's Motion to Dismiss Counts XXVIII, XXIX, and XXX

For the reasons set forth above, the Court shall grant Dennis Foss's motion to dismiss Count XVIII as to any Stock Redemption payments that occurred beyond the four-year statute of limitations period of NH RSA 545-A:9(II) and as to the preferred dividend payments, and the Court shall otherwise deny Dennis Foss's motion to dismiss Counts XXVIII, XXIX, and XXX.

### Q.  Counts XXXI and XXXII  - Avoidance of Fraudulent Transfers and Conveyances as to Defendant Foss Realty, Inc.

The Committee seeks to avoid and to recover various transfers to Foss Realty, Inc. as being fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Count XXXI) and 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(I) (Count XXXII).  Foss Realty, Inc. seeks to dismiss the fraudulent transfer claims in Counts XXXI and XXXII on the grounds that the Committee has failed to plead any facts to support its assertion that the company was insolvent.  For the reasons set forth above in section III.K.1, the Court concludes that the complaint contains sufficient allegations, when viewed in the light most favorable to the Committee, to withstand Foss Realty, Inc.'s motion to dismiss.  Accordingly, the Court shall deny Foss Realty, Inc.'s motion to dismiss Counts XXXI and XXXII.

### R.  Counts XXXIII to XXXV - Avoidance of Fraudulent Transfers and Conveyances as to Defendant Foss Family LLC I

The Committee seeks to avoid and to recover various transfers to Foss Family LLC I as being fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Count XXXIII), 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(I) (Count XXXIV), and 11 U.S.C.

§§ 548 and 550 (Count XXXV).  Foss Family LLC I seeks to dismiss the fraudulent transfer claims in Counts XXXIII through XXXV on the grounds that the Committee has failed to plead any facts to support its assertion that the company was insolvent.  For the reasons set forth above in section III.K.1, the Court concludes that the complaint contains sufficient allegations, when viewed in the light most favorable to the Committee, to withstand Foss Family LLC I's motion to dismiss.  Accordingly, the Court shall deny Foss Family LLC I's motion to dismiss Counts XXXIII, XXXIV, and XXXV.

### S.    Counts XXXVI to XXXVIII - Avoidance of Fraudulent Transfers and Conveyances as to Defendant Foss Family LLC II

The Committee seeks to avoid and to recover various transfers to Foss Family LLC II as being fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Count XXXVI), 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(I) (Count XXXVII), and 11 U.S.C. §§ 548 and 550 (Count XXXVIII).  Foss Family LLC II seeks to dismiss the fraudulent transfer claims in Counts XXXVI through XXXVIII on the grounds that the Committee has failed to plead any facts to support its assertion that the company was insolvent.  For the reasons set forth above in section III.K.1, the Court concludes that the complaint contains sufficient allegations, when viewed in the light most favorable to the Committee, to withstand Foss Family LLC II's motion to dismiss.  Accordingly, the Court shall deny Foss Family LLC II's motion to dismiss Counts XXXVI, XXXVII, and XXXVIII.

### T.    Counts XXXIX to XLIII - Avoidance of Fraudulent and Preferential Transfers and Conveyances as to Defendant Business Helicopters, Inc.

The Committee seeks to avoid and to recover various transfers to Business Helicopters, Inc. as being fraudulent and/or preferential under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Count XXXIX), 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(I) (Count

XL), 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:5(II) (Count XLI), 11 U.S.C. §§ 548 and 550 (Count XLII), and 11 U.S.C. §§ 547 and 550 (Count XLIII). Business Helicopters seeks to dismiss the claims in Counts XXXIX through XLIII on the grounds that the Committee has failed to plead any facts to support its assertion that the company was insolvent. For the reasons set forth above in section III.K.1, the Court concludes that the complaint contains sufficient allegations, when viewed in the light most favorable to the Committee, to withstand Business Helicopters, Inc.'s motion to dismiss. Accordingly, the Court shall deny Business Helicopter, Inc.'s motion to dismiss Counts XXXIX, XL, XLI, XLII, and XLIII.

## IV.  CONCLUSION

This opinion constitutes the Court's rulings under FRCP 12(b)(6). The Court shall issue separate orders ruling on the defendants' various motions to dismiss.

ENTERED at Manchester, New Hampshire.

Date:   July 27, 2007                    /s/ J. Michael Deasy
                                         J. Michael Deasy
                                         Bankruptcy Judge